**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **SHERRY DIGMON, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **1:24-cv-00425-TFM-B** |
| **STEPHEN BILLY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**MOTION TO DISMISS AMENDED COMPLAINT**</u>
<u>**AND INCORPORATED BRIEF**</u>

COMES NOW Defendant Stephen Billy, by and through undersigned counsel of record, and moves this Court for an Order dismissing the claims asserted against him in Plaintiffs' Amended Complaint (Doc. 25), and as grounds therefore would show unto the Court the following:

**I.    INTRODUCTION**

Plaintiffs initially filed suit on November 20, 2024 against several Defendants. One such Defendant was Stephen Billy, the District Attorney for Escambia County, Alabama, who was sued for his actions undertaken as a prosecutor with respect to the Plaintiffs. Defendant Billy filed a Motion to Dismiss on January 23, 2025 (Doc. 20) based upon the absolute immunity provided for his prosecutorial actions.

Following an Order from this Court directing Plaintiffs to amend and re-plead their Complaint in order to cure deficiencies therein, Plaintiffs filed their Amended Complaint on March 13, 2025. Like Plaintiffs' allegations made in the initial Complaint, the allegations in the Amended Complaint – even as altered by Plaintiffs in certain respects discussed herein – are also due to be dismissed based upon well-settled absolute immunity.

Plaintiffs' lengthy initial Complaint, and even more lengthy Amended Complaint, ascribes certain hypothetical motives for Billy's actions.[1] However, what matters in the absolute immunity analysis is not Billy's motives – which are simply irrelevant to this analysis – but his specific actions and whether they fall within the prosecutorial function. When the Amended Complaint is distilled down to the specific, allegedly wrongful acts of Defendant Billy himself – conduct largely consisting of Billy's actions with the Escambia County grand jury and its indictments returned against three Plaintiffs and impeachment of Plaintiff Digmon – it is clear that Billy has absolute immunity from Plaintiffs' claims as such acts fall well within his prosecutorial role.

Defendant Billy's absolute immunity from Plaintiffs' claims – also frequently labeled prosecutorial immunity – has its modern origin in the Supreme Court case of *Imbler v. Pachtman*, 424 U.S. 409 (1976). Despite the passage of nearly half a century since the *Imbler* decision was handed down, the doctrine of prosecutorial immunity has remained robust and well-supported under case law authority from the Supreme Court, the Eleventh Circuit Court of Appeals, and elsewhere.

Plaintiffs' claims against Defendant Stephen Billy asserted in the Amended Complaint are due to be dismissed.

## II.    THE AMENDED COMPLAINT'S ALLEGATIONS AGAINST DEFENDANT BILLY

Plaintiffs bring all claims in this action against multiple Defendants under 42 U.S.C. § 1983. In the initial section of the Amended Complaint, Plaintiffs claim they were subjected to retaliatory arrests and prosecution by Defendants. (Doc. 25, ¶¶ 2-6). The style of the Amended Complaint shows that "STEPHEN BILLY, District Attorney" is sued in his individual capacity

---

[1] The initial Complaint had 494 numbered paragraphs, while the Amended Complaint now has 537.

(PageID.198), which is confirmed in Paragraph 14 of the Amended Complaint alleging that Billy is the District Attorney for Escambia County, Alabama.

### A.    Initial Alleged Actions of Defendant Billy

Defendant Billy is alleged to have issued a subpoena on September 19, 2023 to the Escambia County School Board ("the Board") "pursuant to his powers as district attorney," which subpoena was directed to the Board's record custodians, Rochelle Richardson and Plaintiff Ashley Fore. (Doc. 25, ¶¶ 87, 91). The subpoena recites that it was issued pursuant to § 12-17-184 of the Code of Alabama – whose subsection (18) authorizes the district attorney to issue such a subpoena – and sought "certified copies of any and all checks written to employees and labeled as 'COVID' payments or 'COVID BONUS' for the years 2020-2023." (Doc. 25, ¶¶ 95, 100). This subpoena to the Board was received by Plaintiff Fore, and was ultimately shared with certain Board members, one of whom (Plaintiff Digmon) is alleged to have shared the subpoena with Plaintiff Fletcher, an *Atmore News* reporter. (Doc. 25, ¶¶ 115-121). The Amended Complaint does not allege that issuance or service of this subpoena by Defendant Billy was wrongful or beyond his authority as district attorney, but it alleges without explanation that the subpoena to the Board for COVID payment information was somehow issued by Billy "as part of a sham investigation to help create the pretext to arrest Plaintiffs." (Doc. 25, ¶ 88).

Defendant Billy is alleged to have written to members of the Board on September 21, 2023 about a recent annual audit of the Board's finances, stating that he spoke with the auditors after rumors circulated about misspending or misappropriation of funds and that based on those discussions with the auditors, there was nothing to present to a grand jury. (Doc. 25, ¶¶ 123-126). A few weeks later, Defendant Billy is alleged to have spoken at an October 12, 2023 public meeting of the Board, again refuting rumors of any forthcoming grand jury indictment for purported mishandling of funds given his discussions with the Board's auditors, and urging

members of the Board to vote consistent with their statutory duties under ALA.CODE § 16-1-41.1 to renew the contract of school system superintendent Michele McClung. (Doc. 25, ¶¶ 135, 138-139, 145-146).

### B.    Pre-Indictment Seizures and Arrests

The Amended Complaint alleges that cell phones of Plaintiffs Jackson and Digmon were seized and searched through search warrants obtained by Defendant Odom, a Sheriff's Deputy, through Odom's application to a local magistrate, who signed off on the search warrants. (Doc. 25, ¶¶ 165-186).[2] The initial Complaint made no allegation that Defendant Billy was involved; however, the Amended Complaint's Paragraph 165 now adds the italicized language below to the initial Complaint's Paragraph 157:

> 165.    A week after the vote, on October 20, 2023, *at the instruction of DA Billy and Sheriff Jackson*, Deputy Arthur Odom sought and obtained warrants to seize and search Sherry's and Cindy's cell phones.

(Doc. 25, ¶ 165).

The search warrants approved by the magistrate for these phones were then executed by the Sheriff's office on October 23, 2023. (Doc. 25, ¶¶ 186-191). The Amended Complaint alleges that the phones were sent by Defendant Sheriff Jackson to Jackson, Alabama to download their content, with Plaintiffs receiving their phones back eight days later. (Doc. 25, ¶¶ 192-193). Aside from the conclusory italicized phrase noted above, there is no allegation in the Amended Complaint that Billy was involved in any way in the application for warrants for seizure of either phone, in presenting the applications to the magistrate, in the magistrate signing off on search

---

[2] The Amended Complaint, like the original Complaint, alleges that Deputy Odom's warrant application recited that Billy had subpoenaed Plaintiff Digmon's phone records, revealing her exchange of about 40 calls from Sept. 11-28 with Plaintiff Jackson. (Doc. 1, ¶ 159; Doc. 25, ¶ 170).

warrants for either phone, in the actual seizure of either phone under the warrants, or in the downloading of data from either phone.

The Amended Complaint also details the warrantless seizure of Plaintiff Fore's cell phone and downloading of data therefrom, with no allegation Defendant Billy was involved. (Doc. 25, ¶¶ 203-216). The Amended Complaint also recites at length the circumstances of Plaintiff Fore's subsequent arrest and booking at the jail (Doc. 25, ¶¶ 218-250), with no allegation of any direct involvement therein by Defendant Billy. The Amended Complaint generally asserts that "[t]he purported basis for Ashley's arrest was entirely fabricated by DA Billy, Sheriff Jackson, and Deputy Odom," but also affirmatively pleads that Deputy Odom "swore to the criminal complaint" on which her arrest was based. (Doc. 25, ¶¶ 225, 239).

The Amended Complaint details Plaintiff Fletcher's arrest by sheriff's deputies on October 27, 2023, with no allegation that Defendant Billy was involved therewith. (Doc. 25, ¶¶ 251-264). At most, Plaintiffs vaguely allege that Defendant Billy had spoken of "plans" to have Plaintiffs Fletcher and Digmon arrested. (Doc. 25, ¶¶ 254-255).

The Amended Complaint also details Plaintiff Digmon's October 27, 2023 arrest by Sheriff's deputies and her jail booking following a criminal complaint signed by Defendant Deputy Odom, but has almost no allegation of Defendant Billy's involvement. (Doc. 25, ¶¶ 265-292). The only mention of Defendant Billy in relation thereto is a change to the original Complaint's Paragraph 260, which read: "Just like Ashley and Don, Sherry was arrested for revealing grand-jury secrets by publishing Don's article." (Doc. 1, ¶ 260). Now, Paragraph 271 of the Amended Complaint changes the original Complaint's Paragraph 260 to read: "Just like with Ashley and Don, *DA Billy and Sheriff Jackson had Sherry arrested* for revealing grand-jury secrets by publishing Don's article." (Doc. 25, ¶ 271)(emphasis added). Still, the Amended Complaint alleges

that Plaintiff Digmon's arrest followed a criminal complaint signed by Defendant Deputy Odom. (Doc. 25, ¶ 272).

### C.    Actions By The Escambia County Grand Jury

The Amended Complaint alleges several actions by the Escambia County grand jury, with related involvement by Defendant Billy as District Attorney. First, Plaintiffs allege that Defendant Billy convened a grand jury that returned an indictment against Plaintiff Digmon, with one count of the indictment charging Plaintiff Digmon with using her position as Board member for financial gain by selling the Board advertising space, and a second count charging Plaintiff Digmon with obtaining currency for payment of advertising from the superintendent and/or from the chief school financial officer. (Doc. 25, ¶¶ 294, 296, 304).[3] The Amended Complaint alleges that Plaintiff Digmon was arrested on November 1, 2023 on the ethics charges in the indictment. (Doc. 25, ¶ 293).

The Amended Complaint alleges that Defendant Billy filed a bill of impeachment against Plaintiff Digmon in Escambia County Circuit Court seeking her removal from the Board, asserting three grounds based upon the work of the grand jury: 1) willful neglect of office, 2) corruption in office, and 3) crime of moral turpitude. (Doc. 1, ¶¶ 301-303).[4] The Amended Complaint alleges

---

[3] Plaintiffs' Amended Complaint engages in a bit of sophistry. In the original Complaint, Plaintiffs alleged that "Billy convened a grand jury and led it to return an indictment against Sherry on two counts of ethics violations." (Doc. 1, ¶ 283). In the Amended Complaint, however, this allegation is changed to "DA Billy had convened a grand jury *to investigate Sherry on* two counts of ethics violations." (Doc. 25, ¶ 294)(emphasis added). There is no dispute that the grand jury returned a two-count indictment of Plaintiff Digmon on ethics charges, with the Amended Complaint later describing these two counts. (Doc. 25, ¶¶ 296, 304).

[4] Continuing the above pattern, the Complaint alleged that "Billy took the highly unusual step of having the grand jury impeach Sherry and seek her removal from the School Board." (Doc. 1, ¶ 301). Plaintiffs now modify this allegation in the Amended Complaint to read: "DA Billy *used the grand jury's investigatory function to investigate* Sherry *for the purpose of gathering evidence and creating a pretextual basis to* remove *her* from the School Board." (Doc. 25, ¶ 314)(emphasis added). Again, the grand jury

that the impeachment was "highly unusual," but not that it was beyond Billy's or the grand jury's powers under Alabama law. See ALA.CODE § 36-11-1 et seq. The Amended Complaint alleges that Billy later moved to dismiss the impeachment case against Plaintiff Digmon on February 22, 2024. (Doc. 25, ¶ 329).

The Amended Complaint alleges that on December 1, 2023, indictments were returned by the Escambia County grand jury against multiple Plaintiffs. The Amended Complaint alleges that the grand jury returned an indictment against Plaintiff Jackson for corruptly obtaining information pertaining to a grand jury in violation of § 12-16-215 of the Code of Alabama. (Doc. 25, ¶¶ 330, 332). The Amended Complaint further alleges that after the indictment, deputies showed up to Jackson's office to arrest her, but that she surrendered after her attorney called the sheriff to allow her to turn herself in, with Plaintiff Jackson then booked into the Escambia County jail on December 4, 2023. (Doc. 25, ¶¶ 339-340). Even while alleging that Plaintiff Jackson was indicted by the grand jury of Escambia County, the Amended Complaint still alleges that Defendant Billy and Defendant Jackson decided to have her arrested to retaliate against her for her speech and political opposition to McClung. (Doc. 25, ¶ 338).[5]

The Amended Complaint also alleges that the grand jury returned indictments on the same day (December 1, 2023) against Plaintiffs Fletcher and Digmon on charges of revealing grand jury secrets. (Doc. 25, ¶¶ 344-345). Plaintiffs allege that the motive for the indictments was to prevent a preliminary hearing for Plaintiffs Digmon and Fletcher from occurring. (Doc. 25, ¶¶ 347-349).

---

impeached Plaintiff Digmon, as alleged later in the Amended Complaint. (Doc. 25, ¶ 320)("DA Billy's grand jury also impeached Sherry for …").

[5] The Amended Complaint alleges that four School Board members voted against the renewal of the contract of superintendent McClung, not just Plaintiffs Digmon and Jackson. Plaintiffs offer no explanation for the absence of "retaliation" against the other two Board members voting against renewal.

Defendant Billy is also alleged to have later reduced Plaintiff Digmon's bond on his own initiative. (Doc. 25, ¶ 366). The Amended Complaint alleges that sheriff's deputies at the jail then took Plaintiff Digmon's mugshot and fingerprints again in reprocessing her, with Digmon being released after paying a processing fee. (Doc. 25, ¶¶ 363-364, 368).

### D.     The Amended Complaint's Plaintiff-by-Plaintiff Allegations of Conduct by Billy

#### 1.     Plaintiff Ashley Fore

Plaintiff Fore complains of the warrantless seizure of her phone, and of her arrest and jail booking. The Amended Complaint alleges that her phone was seized by two sheriff's deputies (Odom and Durden), with data from the phone downloaded by the sheriff. (Doc. 25, ¶¶ 203-215). The Amended Complaint alleges that Plaintiff Fore was arrested on a sworn criminal complaint by Defendant Deputy Odom, which Paragraph 225 of the Amended Complaint quotes from. (Doc. 25, ¶¶ 222-225). The only allegation against Billy concerning this arrest is at Paragraph 239, which alleges that "[t]he purported basis for Ashley's arrest was entirely fabricated by DA Billy, Sheriff Jackson, and Deputy Odom who swore to the criminal complaint." (Doc. 25, ¶ 239). Plaintiff Fore's booking at the jail was handled by sheriff's deputies and other personnel, with no involvement by Billy. (Doc. 25, ¶¶ 242-250).

#### 2.     Plaintiff Cynthia Jackson

The Amended Complaint alleges that Billy was the District Attorney when Plaintiff Jackson was indicted by the Escambia County, Alabama grand jury on December 1, 2023, with the indictment leading to her arrest. Aside from Billy's actions in relation to the grand jury, there is no allegation that he was involved in Jackson's arrest or jail booking. Plaintiff Jackson also complains of the seizure of her phone pursuant to a search warrant obtained by Deputy Odom on October 20, 2023. While Deputy Odom sought and obtained the search warrant for the phone, the

Amended Complaint alleges for the first time that Odom did so "at the instruction of DA Billy and Sheriff Jackson." (Doc. 25, ¶ 165).

### 3.    Plaintiff Sherry Digmon

The Amended Complaint alleges that Defendant Billy was the District Attorney for Escambia County, Alabama on October 27, 2023 when Plaintiff Digmon was indicted by the grand jury on ethics violations, and on December 1, 2023 when she was indicted by the grand jury on charges of revealing grand jury information. Aside from Billy's actions in relation to the grand jury, there is no allegation that Defendant Billy was involved in Plaintiff Digmon's arrest or booking. The Amended Complaint further alleges that Defendant Billy was the District Attorney when the grand jury returned a bill of impeachment against her in October, 2023.

Like Plaintiff Jackson, Plaintiff Digmon now alleges in the Amended Complaint that although a warrant was applied for by Defendant Odom to seize her phone and granted by a magistrate, that Defendant Odom acted "at the instruction of DA Billy and Sheriff Jackson." (Doc. 25, ¶ 165).

### 4.    Plaintiff Don Fletcher

The Amended Complaint does not allege that Defendant Billy was involved in Plaintiff Fletcher's arrest by sheriff's deputies on October 27, 2023, and pleads at most that Billy had "spoken of" plans to have Fletcher arrested. The Amended Complaint alleges that Billy was the District Attorney on December 1, 2023 when Plaintiff Fletcher was indicted by the Escambia County grand jury on charges of revealing grand jury information.

## III.    PLAINTIFFS' INJURIES ALLEGED AND LEGAL CLAIMS ASSERTED

Plaintiffs claim that Defendants chilled and retaliated against their protected speech in violation of the First Amendment, and that the arrests, jail time, and seizure of their phones violated their Fourth Amendment rights. (Doc. 25, ¶¶ 375-377). Plaintiffs claim to have suffered mental

distress, reputational damage, and pecuniary loss, and further seek punitive damages. (Doc. 1, ¶¶ 378-380). Their claims against Defendant Billy are in Counts I, III, and V.

In Count I (Doc. 25, ¶¶ 381-420), Plaintiffs Digmon, Jackson and Fletcher allege Retaliation in Violation of the First Amendment, pleading generally that Defendant Billy and other Defendants sought to retaliate against these Plaintiffs for their protected speech. Plaintiffs specifically allege a First Amendment violation by Billy by misusing what they label "the grand jury's investigative function." (Doc. 25, ¶¶ 395, 403).

Count III (Doc. 25, ¶¶ 435-485) alleges violations of Plaintiffs' Fourth Amendment rights by the search and seizure of cell phones of Plaintiffs Digmon, Jackson and Fore, and arrests of all Plaintiffs. Count III alleges there was no probable cause for the warrantless seizure of Plaintiff Fore's cell phone by Deputies Odom and Durden, and that the seizures and searches of the phones of Plaintiffs Digmon and Jackson, accomplished through the probable cause affidavit of Deputy Odom presented to and approved by a magistrate, violated the Fourth Amendment. (Doc. 25, ¶¶ 436-470). Count III alleges that "DA Billy and Sheriff Jackson ordered the seizure of Sherry's and Cindy's phones," though the Amended Complaint alleges in prior paragraphs discussed *supra* that the phones were seized pursuant to a warrant authorized by a magistrate upon application submitted by Defendant Odom. (Doc. 25, ¶ 455). Count III similarly alleges that Plaintiffs' arrests were "ordered" by Defendants Billy and Jackson, "in reliance on evidence that they compiled through DA Billy's subpoenas, grand jury investigation, and the searches that relied on the evidence from DA Billy's investigation"; however, the Amended Complaint specifically pleads in prior paragraphs discussed *supra* that Plaintiffs Digmon, Fletcher and Jackson were all indicted by the Escambia County grand jury, and that Plaintiffs' arrests otherwise were upon complaints sworn by Defendant Odom. (Doc. 25, ¶ 473). Count III alleges that Plaintiffs' arrests violated the Fourth

Amendment because "DA Billy was able to obtain indictments only because he knowingly or recklessly misled the grand jury on the material facts necessary to satisfy the elements of the crimes charges." (Doc. 25, ¶ 477).

Count V (Doc. 25, ¶¶ 499-529) asserts a claim for Civil-Rights Conspiracy against all Defendants, alleging a conspiracy to violate Plaintiffs' First and Fourth Amendment rights. Plaintiffs allege the September 19 subpoena served upon the Board for COVID-19 payments was somehow "a trap to create pretextual grounds to arrest Plaintiffs." (Doc. 25, ¶ 512). Plaintiffs also allege that Defendant Billy worked with others "on an investigation to impeach [Digmon]." (Doc. 25, ¶ 525).

## IV.    STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully" and more than labels, conclusions, "formulaic recitation of the elements," or "naked assertions." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555–57). On a motion to dismiss, a court accepts the Plaintiffs' factual allegations as true. *Iqbal*, 556 U.S. at 678. "However, conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Airlines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). The court "may disregard labels and conclusions couched as factual allegations." *Doe v. Samford University*, 29 F.4th 675, 685 (11th Cir. 2022). The court does not assume that plaintiffs can prove facts not alleged or that a defendant has violated the law in ways that have not been alleged. *Twombly*, 550 U.S. at 563 n. 8 (citing *Associated General Contractors of California, Inc. v. Carpenters*, 459 U.S. 519, 526 (1983)).

## V.    DEFENDANT BILLY IS ENTITLED TO ABSOLUTE IMMUNITY AGAINST PLAINTIFFS' CLAIMS

### A.    The Immunity Afforded to Prosecutors is Absolute

"Traditional common-law immunities for prosecutors apply to civil cases brought under § 1983." *Rehberg v. Paulk*, 611 F.3d 828, 837 (11th Cir. 2010)(citing *Imbler v. Pachtman*, 424 U.S. 409, 427-28 (1976)). The absolute immunity afforded prosecutors at common law was based on the "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Imbler*, 424 U.S. at 423. Accordingly, the absolute immunity doctrine has evolved such that even wrongful or malicious acts by prosecutors are allowed to go unredressed in order to prevent a flood of claims against the remainder of prosecutors performing their duties properly. *Imbler*, 424 U.S. at 426.

"In § 1983 actions, prosecutors have absolute immunity for all activities that are 'intimately associated with the judicial phase of the criminal process.'" *Rehberg* at 837 (quoting *Van de Kemp v. Goldstein*, 555 U.S. 335, 129 S.Ct. 855, 860 (2009)). "A prosecutor enjoys absolute immunity from allegations stemming from the prosecutor's function as advocate." *Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999)(citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)).

Prosecutorial functions include "acts undertaken . . . in preparation for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." *Mastroianni v. Bowers*, 173 F.3d 1363, 1366 (11th Cir. 1999)(citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)); *Kassa v. Fulton County, Ga.*, 40 F.4th 1289, 1293 (11th Cir. 2022); *Rehberg*, 611 F.3d at 838.

As examples, but without limitation, the Eleventh Circuit has extended absolute immunity to prosecutors for "filing an information without investigation, filing charges without jurisdiction,

filing a baseless detainer, offering perjured testimony, suppressing exculpatory evidence, refusing to investigate complaints about the prison system, and threatening further criminal prosecutions." *Kassa*, 40 F.4th at 1293.

In *Imbler*, *supra*, the prosecutor was held absolutely immune where he allowed a witness to give false testimony at trial and introduced into evidence a sketch altered to resemble the defendant. In explaining why mere qualified immunity for the prosecutor was insufficient as opposed to absolute immunity, the Supreme Court in *Imbler* stated:

> The presentation of such issues in a § 1983 action often would require a virtual retrial of the criminal offense in a new forum, and the resolution of some technical issues by the lay jury. It is fair to say, we think, that the honest prosecutor would face greater difficulty in meeting the standards of qualified immunity than other executive or administrative officials. Frequently acting under serious constraints of time and even information, a prosecutor inevitably makes many decisions that could engender colorable claims of constitutional deprivation. Defending these decisions, often years after they were made, could impose unique and intolerable burdens upon a prosecutor responsible annually for hundreds of indictments and trials.

*Imbler v. Pachtman*, 424 U.S. at 425-426.

## B.    The Prosecutorial Role is Construed Broadly When Considering Immunity

"[A]t common law, '[t]he general rule was, and is, that a prosecutor is absolutely immune from suit for malicious prosecution.'" *Malley v. Briggs*, 475 U.S. 335, 342, 106 S.Ct. 1092, 1097, 89 L.Ed.2d 271 (1986)(quoting *Imbler*, 424 U.S. at 437). In § 1983 actions, prosecutors have absolute immunity for all activities that are "'intimately associated with the judicial phase of the criminal process.'" *Van de Kamp v. Goldstein*, 555 U.S. 335, 129 S.Ct. 855, 860, 172 L.Ed.2d 706 (2009) (quoting *Imbler*, 424 U.S. at 430); accord *Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999). The "'duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom,' and are

nonetheless entitled to absolute immunity," including "an out-of-court 'effort to control the presentation of [a] witness' testimony' … because it was 'fairly within [the prosecutor's] function as an advocate.'" *Buckley*, 509 U.S. at 272-73 (quoting *Imbler*, 424 U.S. at 430-31, nn.32-33).

Thus, prosecutorial immunity is not limited merely to conduct of the prosecutor that occurs in the courtroom. Rather, this immunity typically applies to "preparation for those activities, including the evaluation of evidence and information." *Rehberg*, 611 F.3d at 838; See *Buckley*, 509 U.S. at 273 (noting application of immunity to "the professional evaluation of evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made.").

Absolute immunity applies to a prosecutor's activities "in initiating a prosecution and in presenting the State's case." *Rehberg*, 611 F.3d at 837 (citing *Imbler*, 424 U.S. at 431). Indeed, "the function of a prosecutor that most often invites a common-law tort action is his decision to initiate a prosecution, as this may lead to a suit for malicious prosecution if the State's case misfires." *Imbler*, 424 U.S. at 421. However, "[a] prosecutor's role as an advocate necessarily entails the development and evaluation of a case prior to the formal initiation of a prosecution." *Mullinax v. McElhenney*, 817 F.2d 711, 715 (11th Cir. 1987). "Thus, a prosecutor is entitled to absolute immunity for the factual investigation necessary to prepare a case, including interviewing witnesses before presenting them to the grand jury." *Id*.

### C.    A Prosecutor's Acts, Not Motives, Determine Immunity

Those asserting absolute prosecutorial immunity's shield bear the burden of establishing its application based on the function(s) in question. *Burns v. Reed*, 500 U.S. 478, 486 (1991). As noted previously, absolute prosecutorial immunity extends to a prosecutor's activities that are "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. This fact-specific inquiry "looks to 'the nature of the function performed, not the identity of the

action who performed it.'" *Buckley*, 509 U.S. at 269; *see Kassa*, 40 F.4th at 1294 (explaining the functional approach "look[s] at whether immunity is justified for the specific function in question").

Absolute immunity does not depend entirely upon a defendant's title, but involves a functional approach granting immunity based on conduct. *Rehberg*, 611 F.3d at 837. The determination of absolute prosecutorial immunity depends on the nature of the function performed, not whether the prosecutor performed that function incorrectly or even with dishonesty, such as presenting perjured testimony in court. *Hart v. Hodges,* 587 F.3d 1288 (11th Cir. 2009). As the 11th Circuit has stated:

> While a prosecutor's motives may be relevant to whether a civil rights plaintiff has stated a claim, they are not relevant to determining whether absolute immunity applies. As the Supreme Court explained in *Imbler*, absolute immunity hinges on the "functional nature of the [prosecutor's] activities," not on their personal motivations, and so prosecutors may be immune even when their actions are "malicious or dishonest." *Imbler*, 424 U.S. at 427, 430; *see also Kulwicki v. Dawson*, 969 F.2d 1454, 1464 (3d. Cir. 1992)("Consideration of personal motives is directly at odds with the Supreme Court's simple functional analysis of prosecutorial immunity[.]"); *Brummett v. Camble*, 946 F.2d 1178, 1181 (5th Cir. 1991)(holding that prosecutors are entitled to absolute immunity even if they have a "personal interest in filing charges" because "absolute immunity is justified and defined by the governmental functions it protects and serves, not by the motives with which a particular officer performs those functions").

*Captain Jack's Crab Shack, Inc. v. Cooke*, No. 21-11112, -11113, -11114, 2022 WL 4375364, *7 (11th Cir. 2022)(unpublished).

"This approach makes clear that absolute prosecutorial immunity 'is not grounded in any special esteem for those who perform these functions, and certainly not from a desire to shield lesser abuses of office, but because any lesser degree of immunity could impair the judicial process itself.'" *Kassa*, 40 F.4th at 1292.

As a result, "[a]bsolute immunity renders certain public officials completely immune from liability, even when their conduct is wrongful or malicious prosecution." *Id.* Courts acknowledge freely that the doctrine of absolute immunity sometimes "deprives a plaintiff of compensation that he undoubtedly merits." *Van de Kamp*, 555 U.S. at 348.

Prosecutors are immune for appearances in judicial proceedings, including prosecutorial conduct before grand juries, statements made during trial, examination of witnesses, and presentation of evidence in support of a search warrant during a probable cause hearing. *Rehberg*, 611 F.3d at 837-838. Summing up case precedent, the Supreme Court has noted the following:

> As this and other cases indicate, pretrial court appearances by the prosecutor in support of taking criminal action against a suspect present a substantial likelihood of vexatious litigation that might have an untoward effect on the independence of the prosecutor. Therefore, absolute immunity for this function serves the policy of protecting the judicial process, which underlies much of the Court's decision in *Imbler*.

*Burns v. Reed*, 500 U.S. at 492.

Plaintiffs' Amended Complaint improperly focuses upon alleged wrongful motives for Billy's prosecutorial conduct, instead of the nature of his actions, which clearly fall within the prosecutorial function. Plaintiffs make several allegations detailed herein against Billy concerning the manner in which he secured grand jury indictments of three Plaintiffs (Digmon, Fletcher, and Jackson); however, the case authorities herein clearly show that Billy has absolute immunity for his conduct before the grand jury.

The Amended Complaint alleges that in late October of 2023, the grand jury returned an indictment of Plaintiff Digmon on two counts of violating the state's ethics law, together with a count for impeachment of Plaintiff Digmon, a Board member. Plaintiffs' initial Complaint alleged that "Billy convened a grand jury and led it to return an indictment against [Digmon] on two counts of ethics violations" (Doc. 1, ¶ 283), with the Amended Complaint now steering around Billy's

prosecutorial conduct while still alleging therein details of the two counts of the indictment. (Doc. 25, ¶¶ 296, 304).[6] The initial Complaint also alleged at Paragraph 301 that "Billy took the highly unusual step of having the grand jury impeach [Digmon] and seek her removal from the School Board," an allegation Plaintiffs also try to skirt in the Amended Complaint, though the grand jury's grounds of impeachment of Plaintiff Digmon remain alleged therein. (Doc. 25, ¶¶ 317-323). Impeachment of public officials through grand jury action is a proper and recognized function of district attorneys under longstanding Alabama law. See Ala.Code § 36-11-1 et seq.

The Amended Complaint alleges that on December 1, 2023, indictments were returned by the grand jury of Escambia County, Alabama against Plaintiffs Jackson, Fletcher, and (once again) Digmon. Like with the grand jury actions in October of 2023, the Amended Complaint characterizes Billy's conduct in relation these grand jury indictments as wrongful, alleging that "DA Billy's grand jury returned an indictment" for Plaintiff Jackson's arrest (Doc. 25, ¶ 330) and that Defendant Billy sought "to retaliate against her for her speech and her political opposition to McClung…" (Doc. 25, ¶ 338). The Amended Complaint takes a similar approach as to Plaintiffs Digmon and Fletcher, alleging that their indictments were brought to punish the two journalists for their speech and to prevent a preliminary hearing on probable cause at which McClung and Deputy Odom would be subpoenaed. (Doc. 25, ¶¶ 344, 347). But Billy's actions as prosecutor in relation to his actions before the grand jury and in securing indictments are clearly prosecutorial functions protected by immunity.[7]

---

[6] The Amended Complaint's new allegation that Billy "convened a grand jury to investigate Sherry on two counts of ethics violations" and "used the grand jury's investigative functions" to subpoena records and interview a Board member as a witness are discussed in Section V(E), *infra*.

[7] The Amended Complaint appears to even accuse Billy of misconduct in *reducing* Plaintiff Digmon's bond. (Doc. 25, ¶ 366). Nonetheless, prosecutorial acts in connection with bond proceedings are entitled to absolute immunity. See *Johnson as Trustee of Levar Curtis Johnson Trust v. Hillquist*, Case No. 24-cv-25114, 2025 WL 295156, *3 (S.D.Fla. Jan. 24, 2025)(prosecutor defendants absolutely immune from

Allegations that Billy had improper motives in seeking such indictments as well as impeachment fail to negate or diminish the absolute immunity attaching to such traditional prosecutorial functions. The decision to initiate charges against a criminal defendant is clearly a prosecutorial function. *Imbler*, 424 U.S. at 431; *Hartman v. Moore*, 547 U.S. 250, 261-262 (2006)(actions for retaliatory prosecution are not brought against the prosecutor, "who is absolutely immune for the decision to prosecute"). Compilation and issuance of charging documents or obtaining a warrant for plaintiff's arrest are actions fitting squarely within a prosecutor's function. *Imbler*, 424 U.S. at 431.

Prosecutorial immunity applies not only to the initiation of criminal prosecution, but also to its pursuit. *Imbler*, 424 U.S. at 431; accord *Jones v. Cannon*, 174 F.3d at 1281. Prosecutors have been found immune for the initiation or continuation of a prosecution, appearances before grand juries or other judicial proceedings, the examination of witnesses, and the presentation of evidence. See *Rehberg*, 611 F.3d at 837-838.

In *Rehberg*, the 11th Circuit considered allegations by the target of a grand jury who alleged that a district attorney and investigator had engaged in malicious prosecution of him in violation of his Fourth Amendment rights. The plaintiff in *Rehberg* alleged there was no probable cause to indict him, and that the prosecutors had acted with malice to create fabricated evidence and present such fabricated evidence, together with false testimony, to the grand jury. The Court rejected the claims based upon giving false testimony to the grand jury, as well as a claim for conspiracy to provide such false testimony, finding them barred by immunity. Also, the Court rejected retaliatory

---

accusations they manipulated bond proceedings as they are "activities [that are] intimately associated with the judicial phase of the criminal process"); *Mathis v. Eslinger*, No. 20-13761, 2022 WL 1689124, *8, (M.D. Fla. Nov. 10, 2022)(allegations that prosecutors are liable for actions in pretrial proceedings including decisions made about plaintiff's bond are subject to immunity as such actions concerned "initiating the criminal case and preparing for trial").

prosecution claims based upon an allegedly malicious decision to prosecute, based on Supreme Court authority stating that the prosecutor's "alleged decision to prosecute Rehberg, even if made without probable cause and even if caused solely by Paulk's and his unconstitutional retaliatory animus, is protected by absolute immunity." *Rehberg*, 611 F.3d at 849 (citing *Hartman*, 547 U.S. at 262-62).

The United States Supreme Court has noted the widespread agreement among the Courts of Appeal that prosecutors are absolutely immune from liability under § 1983 for their conduct before grand juries. *Burns v. Reed*, 500 U.S. 478, 490 n.6 (1991). This is in accord with the "common-law tradition of immunity for a prosecutor's decision to bring an indictment, whether he has probable cause or not." *Buckley*, 509 U.S. at 274, n.5. And the motivations for doing so are not relevant to the functional analysis. *See Captain Jack's Crab Shack, Inc. v. Cooke*, No. 21-11112, -11113, -11114, 2022 WL 4375364, *7 (11th Cir. 2022)(per curiam)(unpublished).

This remains the case even if a prosecutor's actions are predicated upon false statements. *Rowe v. Fort Lauderdale*, 279 F.3d 1271, 1279-1280 (11th Cir. 2002)(noting prosecutorial immunity applies "even if [a prosecutor] knowingly proffered perjured testimony and fabricated exhibits at trial"); *Hart*, 587 F.3d at 1295; *Jarallah v. Simmons*, No. 06-10879, 191 F.App'x 918, 921 (11th Cir. 2006)(per curiam)(affirming dismissal on prosecutorial immunity grounds where the "complaint alleged defendants initiated baseless charges against him").

Defendant Billy is immune for Plaintiffs' claims based upon his conduct in connection with the Escambia County grand jury and its return of indictments and bill of impeachment, as absolute immunity protects this conduct squarely fitting within Billy's prosecutorial role. Allegations of improper motives, a lack of probable cause, and the like are simply irrelevant to the immunity analysis and in no way affect the absolute immunity afforded to Defendant Billy.

Lastly, the Amended Complaint details certain other conduct of Defendant Billy which is clearly neither wrongful, nor which caused injury to Plaintiffs. This includes the subpoena issued by Billy to the Board for information on past COVID-19 payments, which did not concern Plaintiffs in any way. Billy had the express power under ALA.CODE § 12-17-184(18) to prepare and serve such subpoena. Moreover, the Amended Complaint details a letter by Billy to Board members advising of his discussions with Board auditors and his assessment based thereon that there were no financial improprieties worthy of presentment to a grand jury, as well as comments made by Billy at a public meeting of the Board on the same topic and urging them to adhere to their statutory duties as Board member in ALA.CODE §16-1-41.1 with regard to potentially renewing the contract of the superintendent. Neither the subpoena to the Board for COVID payment records, nor the letter to Board members, nor Billy's comments at a public Board meeting, were wrongful or injurious to any Plaintiff.

### D.    Absolute Immunity Applies With Equal Force to Conspiracy Claims

A person may not be prosecuted for conspiring to perform an act that he may perform with impunity. *Rehberg* at 854 (quoting *Jones*, 174 F.3d at 1289). In other words, a prosecutor cannot be liable for "conspiracy" to violate a defendant's constitutional rights by prosecuting him if the prosecutor also is immune from liability for actually prosecuting the defendant. *Rehberg* at 854.

In a slightly different context, the Eleventh Circuit has held that "absolute immunity applie[s] equally both to the false testimony itself and to the alleged conspiracies to present false testimony," because to allow otherwise "would be to permit through the back door what is prohibited through the front." *Rehberg*, 611 F.3d at 841 (citing *Jones*, 174 F.3d at 1289); see *Rowe*, 279 F.3d at 1282 ("It would be cold comfort for a prosecutor to know that he is absolutely immune from direct liability for actions taken as a prosecutor, if those same actions could be used to prove him liable on a conspiracy theory involving the conduct for which he was not immune..."). As

another example, a "conspiracy to present perjured testimony and the act of presenting perjured testimony is a distinction without a difference." *Jones*, 174 F.3d at 1289.

In *Rowe*, the 11th Circuit considered a claim, among several claims, that a prosecutor conspired to wrongly and maliciously prosecute and convict the plaintiff for sexually abusing his daughter. In addressing the conspiracy claim against the prosecutor Lazarus, the 11th Circuit stated:

> There remains the claim against Lazarus based upon the allegations that he conspired with others to maliciously prosecute Rowe. Lazarus can only be liable for conspiring to violate Rowe's rights if his agreement to join the conspiracy or conduct knowingly done in furtherance of it occurred while he was not in his prosecutorial role. Lazarus cannot be held liable for conspiring to violate Rowe's rights by prosecuting him.

*Rowe*, 279 F.3d at 1282.

Here, the only actions by Defendant Billy that Plaintiffs allege were in furtherance of any conspiracy are acts taken by Billy in his prosecutorial role and for which he enjoys absolute immunity – obtaining indictments of three plaintiffs and an impeachment and from the Escambia County grand jury. Such acts lie at the heart of the traditional prosecutorial function and squarely within Billy's role as district attorney and prosecutor. The 11th Circuit proceeded to conclude in *Rowe* that "...acts for which a prosecutor enjoys absolute immunity may not be considered as evidence of the prosecutor's membership in a conspiracy for which the prosecutor does not have immunity." *Rowe* at 1282.

In sum, acts for which Billy has immunity cannot support a claim for an alleged conspiracy to commit those acts. Immunity against claims for Billy's prosecutorial actions also applies to claims for conspiracy to commit those actions. Defendant Billy has absolute immunity for the claims of a conspiracy to arrest and prosecute Plaintiffs as alleged in the Amended Complaint.

E.    **Plaintiffs' New Phrasing in the Amended Complaint of Old Allegations in the Original Complaint Still Fail**

Plaintiffs' Amended Complaint attempts to frame certain allegations made in the initial Complaint in new ways in an attempt to circumvent Billy's absolute immunity as asserted in his previously-filed Motion to Dismiss (Doc. 20). These include new, conclusory allegations against Billy that he was somehow involved in certain actions by Sheriff's deputies, and which mischaracterize as investigative other prosecutorial actions of Billy before the grand jury which returned indictments against three Plaintiffs and Plaintiff Digmon's impeachment.

These attempts fail for the multiple reasons detailed below. The proper scrutiny applied to such allegations is outlined in *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S.Ct. 1837, 1949-50 (2009):

> Two working principles underlie our decision in *Twombly*. First, the tent that a court must accept all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice….Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged – "but it has not show[n]" – that the pleader is entitled to relief.

*Iqbal*, 556 U.S. at 678-79.

"It is established law in this circuit that the *Twombly-Iqbal* plausibility standard applies equally to" a complaint "involving defendants who are able to assert [ ] immunity as a defense." *McCullough v. Finley*, 907 F.3d 1324, 1330 (11th Cir. 2018).

### 1.    Plaintiffs' Conclusory Allegations and Labels Should Be Disregarded

Plaintiffs' Amended Complaint resorts to conclusory allegations which this Court should disregard in considering the instant motion. These include the following allegations, all of which are made without further factual support:

- An allegation at Paragraph 165 that Defendant Odom sought and obtained search warrants for cell phones of Plaintiffs Digmon and Jackson "at the instruction of DA Billy and Sheriff Jackson," though Deputy Odom prepared the warrant application, successfully presented it to a magistrate, and executed the warrants

- An allegation at Paragraph 239 that the basis for Plaintiff Fore's arrest was "entirely fabricated" by Billy, Jackson, and Deputy Odom, though Deputy Odom swore to the criminal complaint

- An allegation at Paragraph 271 that "DA Billy and Sheriff Jackson had [Plaintiff Digmon] arrested for revealing grand jury secrets by publishing Don's article," though the very next paragraph alleges that Deputy Odom swore to the criminal complaint leading to Digmon's arrest

- An allegation at Paragraph 294 that the grand jury that indicted Plaintiff Digmon was convened by Billy "to investigate [Plaintiff Digmon] on two counts of ethics violations," and that for the grand jury that impeached Plaintiff Digmon, that Billy "used the grand jury's investigatory function to investigate [Plaintiff Digmon] for the purpose of gathering evidence and creating a pretextual basis to remove her" from the Board (Paragraph 314)

These conclusory allegations, labels and legal conclusions are due to be disregarded by this Court, in accord with a number of courts within the Eleventh Circuit when faced with similar allegations violating the *Twombly-Iqbal* principles above. See *Ward v. Chafin*, No. 22-12993, 2023 WL 2661527, *3 (11th Cir. March 28, 2023)(unpublished)(amended complaint labeling prosecutor's conduct "administrative," "ministerial," "investigative," or "beyond the traditional role of the prosecutor," without factual support, dismissed on immunity grounds, disregarding labels and conclusions couched as factual allegations in finding conduct to be ordinary initiation and continuation of prosecution); *Captain Jack's Crab Shack, Inc. v. Cooke*, No. 21-11112, -11113, -11114, 2022 WL 4375364, *7 (11th Cir. Sept. 22, 2022)(unpublished)(allegations

prosecutors "directed" illegal raid, "insisted" officers include "fabricated evidence" in warrant affidavit, and acted in their "investigative capacities" failed to include enough facts to plausibly allege how prosecutors directed any search, what prosecutors did to insist on false statements, or how prosecutors acted in investigative capacity); *Hoffman v. Office of State Attorney*, 793 F.App'x 945, 954 (11th Cir. Dec. 2, 2019)(unpublished)(alleging without supporting facts that prosecutors "acquiesce[d]", "approved", or "sanctioned" conduct of others held conclusory where complaint contained insufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"); *Mathis v. Eslinger*, No. 20-13761, 2022 WL 1689124, *8, (M.D. Fla. Nov. 10, 2022)(allegations prosecutors "approved of, and/or directed, the arrest of Mathis despite the lack of probable cause" and engaged in "concoction of false charges" subject to defense of absolute immunity as claims arise from actions prosecutors "took in initiating the criminal case and preparing for trial"); *Rone v. Rich*, Civil Action No. 1:22-00509, 2023 WL 8592980, *7 (S.D. Ala. 2023), *recommendation adopted by district court*, 2023 WL 8521390 (S.D. Ala. Dec. 8, 2023)(allegation assistant district attorney participated in interview "with permission or direction" from district attorney rejected as "conclusory on its face").

The preceding conclusory allegations of the Amended Complaint noted above are strikingly similar to the allegations in these case authorities that were disregarded under the *Twombly-Iqbal* analysis, with those Courts determining that absolute immunity for the prosecutors applied. Even if this Court considers Plaintiffs' allegations, however, there is no conduct alleged by Billy that falls outside of the absolute immunity afforded for prosecutorial actions under applicable law.

### 2.      Plaintiffs Allege No Acts by Billy Meeting the Investigation Exception to Absolute Immunity

As previously outlined, a prosecutor is entitled to absolute immunity for all actions he takes while performing his function as an advocate for the government. *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1279 (11th Cir. 2002). There is no immunity for a prosecutor's acts outside of the prosecutorial role and in a role normally reserved for a police officer. As the *Buckley* decision later made clear, the Supreme Court carved out from prosecutorial immunity only "those investigatory functions *that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings*." *Buckley*, 509 U.S. at 273 (emphasis added).

As best expressed by the 11th Circuit, this exception for investigatory actions applies when a prosecutor performs "the investigative functions normally performed by a police officer." *Rowe*, 279 F.3d at 1280; see also *Ward v. Chafin*, No. 22-12993, 2023 WL 2661527, *3 (11th Cir. March 28, 2023)(unpublished)(complaint against prosecutor subject to dismissal despite labeling certain conduct "investigative" absent allegations prosecutors engaged in "functions normally performed by a detective or police officer"). The 11th Circuit has also stated as follows:

> A prosecutor functions as an investigator when he "search[es] for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested." *Buckley*, 509 U.S. at 273, 113 S.Ct. at 2616. For example, a prosecutor so functions if, pre-indictment, he visits a crime scene, endeavoring to identify the source of a bootprint left there. *Id.* at 275-75, 113 S.Ct. at 2616. Similarly, a prosecutor also functions as an investigator when he participates in the search of a suspect's apartment. *Rowe v. City of Ft. Lauderdale*, 279 F.3d 1271, 1280 (11th Cir. 2002).

*Rivera v. Leal*, 359 F.3d 1350, 1353 (11th Cir. 2004).

For example, the prosecutor in *Rowe* had absolute immunity for many actions, but not for his active participation in the search of plaintiff's apartment. *Id.* "…[B]y attending and allegedly participating in the search of Rowe's apartment, Lazarus stepped out of his advocate's role, and

lost the protection of absolute immunity." *Rowe*, 279 F.3d at 1281. But this loss of immunity was only for performing those actions normally performed by a police officer, as the prosecutor still retained absolute immunity for acts undertaken in the role of prosecutor:

> It was only while he was in the prosecutor's role that Lazarus allegedly did anything that violated Rowe's clearly established rights, such as: charging Rowe without probable cause, withholding the tapes of the girl's statement, and proffering fabricated evidence such as the rope and perjured testimony. For those actions taken while in the prosecutor's role, however, Lazarus is entitled to absolute immunity from liability.

*Rowe*, 279 F.3d at 1281.

The Supreme Court has recognized that "[t]here is a difference between the advocate's role in evaluating evidence … as he prepares for trial … and the detective's role in searching for the clues … that might give him probable cause to recommend that a suspect be arrested." *Buckley*, 509 U.S. at 273, 113 S.Ct. at 2616; see also *Mullinax v. McElhenney*, 817 F.2d 711, 715 (11th Cir. 1987)(prosecutor has "absolute immunity for the factual investigation necessary to prepare a case, including interviewing witnesses before presenting them to the grand jury," which differs from a prosecutor's "direct participation with the police in conducting a search"). Obviously, as the Court stated in *Buckley*, "if a prosecutor plans and executes a raid on a suspected weapons cache, he 'has no greater claim to complete immunity than activities of police officers allegedly acting under his direction.'" *Buckley*, 509 U.S. at 274.

Plaintiffs make no allegation in the Amended Complaint that any of Billy's conduct that they conclusorily characterize as "investigative" or "investigatory" – conduct like appearing before and utilizing a grand jury – constitutes or is remotely akin to actions regularly undertaken by law enforcement officers or police officers.

Accordingly, there is no allegation in the Amended Complaint of conduct by Billy falling within the investigatory role that law enforcement officers fulfill, as opposed to a prosecutorial function; therefore, the claims against Billy are due to be dismissed on immunity grounds.

### 3.    Plaintiffs' Attempt to Hold Billy Liable for Actions of Others Fails

In certain instances in the Amended Complaint, Plaintiffs attempt for the first time to claim that Billy is liable for the actions of others. Specifically, through the conclusory allegations detailed above, Plaintiffs try to hold Billy responsible for actions of sheriff's deputies like Deputy Odom by asserting that Odom acted "at the instruction of DA Billy" in applying for, obtaining from a magistrate, and executing search warrants, and also in swearing to criminal complaints concerning certain Plaintiffs. Plaintiffs' attempt fails.

First, the Supreme Court has held that "the issuance of a search warrant is unquestionably a judicial act…" *Burns v. Reed*, 500 U.S. 478, 492 (1991). Prosecutors have absolute immunity for their actions in a probable-cause hearing, including appearing before a judge and presenting evidence in support of a motion for a search warrant. *Burns*, 500 U.S. at 491. Thus, appearing at a probable cause hearing is "intimately associated with the judicial phase of the criminal process." *Burns*, 500 U.S. at 492 quoting *Imbler*, supra, at 430. It is also connected with the initiation and conduct of a prosecution. *Burns*, 500 U.S. at 492. *Captain Jack's Crab Shack, Inc. v. Cooke*, No. 21-11112, -11113, -11114, 2022 WL 4375364, *6 (11th Cir. 2022)(allegations that prosecutors "caused searches of [their] home [and] business" by "securing judicial approval" or a search warrant "based on … false statements" in a "warrant affidavit" clearly concern prosecutors' role as advocates for the state).

Billy would undoubtedly have absolute immunity had he, instead of Deputy Odom, undertaken to obtain the search warrants for the phones of Plaintiffs Digmon and Jackson. But it was Deputy Odom who Plaintiffs allege applied for the search warrants, presented them to the

magistrate for approval, and then executed the warrants, not Billy. Billy has immunity for such acts had he undertaken them himself, and is also entitled to immunity where he is alleged, even in such a conclusory fashion, of "instructing" others to undertake them, as the issuance of such warrants is a judicial act.

Billy is also alleged in the Amended Complaint, again in conclusory fashion, of having used the Escambia County grand jury to "investigate" Plaintiffs, even though the same grand jury later returned indictments against three Plaintiffs and impeachment against Plaintiff Digmon. As shown previously, simply invoking some form of the term "investigate" and applying it to a prosecutor's acts does not clear the considerable hurdle of absolute immunity. Prosecutorial immunity applies to a prosecutor's acts before a grand jury, as the Supreme Court has noted the widespread agreement among the Courts of Appeal that prosecutors are absolutely immune from liability under § 1983 for their conduct before grand juries. *Burns v. Reed*, 500 U.S. 478, 490 n.6 (1991). Moreover, immunity protects a prosecutor's actions, particularly those before the grand jury, and not just those which initiate a prosecution, but also those which are "preliminary to the initiation of a prosecution." *Buckley*, 509 U.S. at 272-273. In no way is a prosecutor's conduct before a grand jury equivalent to the role and actions of a police officer.

Moreover, there is no constitutional right against the initiation of a criminal investigation. As stated by the 11th Circuit:

> The initiation of a criminal investigation in and of itself does not implicate a federal constitutional right. The Constitution does not require evidence of wrongdoing before the government can begin investigating that suspect. See *United States v. Aibejeris*, 28 F.3d 97, 99 (11th Cir. 1994). No § 1983 liability can attach merely because the government initiated a criminal investigation.

*Rehberg*, 611 F.3d at 850 n.24.

Lastly, as a matter of practicality, Plaintiffs' claim based upon Billy's actions before the grand jury directly contravene the secrecy of grand jury proceedings as embraced in ALA.CODE § 12-16-214 through -216. The Supreme Court "consistently ha[s] recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Rehberg v. Paulk*, 611 F.3d 828, 840 (11th Cir. 2010) quoting *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 424, 103 S.Ct. 2133, 3138, 77 L.Ed.2d 743 (1983). Plaintiffs cannot assert a claim against Defendant Billy based upon his conduct before the grand jury without violating the secrecy of the grand jury.

## VI.    CONCLUSION

WHEREFORE, these premises considered, Defendant Stephen Billy moves this Court for an Order dismissing Plaintiffs' claims against Billy contained in their Amended Complaint, and granting to said Defendant such other, further or different relief to which he may be entitled.

Respectfully submitted,

*s/ Michael D. Strasavich*
H. WILLIAM WASDEN        (WASDH4276)
MICHAEL D. STRASAVICH    (STRASM9557)

*Attorneys for Defendant, Stephen Billy*

**OF COUNSEL:**
BURR & FORMAN LLP
11 North Water Street, Suite 22200
Mobile, Alabama 36602
(251) 344-5151 Telephone
(251) 344-9696 Facsimile
bwasden@burr.com
mstrasavich@burr.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 10th day of April, 2025, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF filing system which will send notification of such filing to the following.

Jared McClain, Esquire
Brian Morris, Esquire
Institute for Justice
901 N. Glebe Road, Suite 900
Arlington, Virginia 22203
jmcclain@ij.org
bmorris@ij.org
*Attorneys for Plaintiff*

Emily B. Van Haneghan, Esquire
Hand Arendall Harrison Sale LLC
Post Office Box 123
Mobile, Alabama 36601
evanhaneghan@handfirm.com
*Attorneys for Defendants, Sheriff Heath Jackson, Deputy Arthur Odom, Deputy Kevin Durden, Deputy Matthew Rabren and Deputy Steven Dereck Lowry*

Christopher S. Williams, Esquire
Hand Arendall Harrison Sale LLC
Post Office Box 1499
Fairhope, Alabama 36533
cwilliams@handfirm.com

*Attorneys for Defendants, Sheriff Heath Jackson, Deputy Arthur Odom, Deputy Kevin Durden, Deputy Matthew Rabren and Deputy Steven Dereck Lowry*

 *s/ Michael D. Strasavich*
OF COUNSEL