IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SHERRY DIGMON, et. al., | ) | |
| | ) | |
| **Plaintiffs** | ) | |
| | ) | |
| vs. | ) | CIV. ACT. NO. 1:24-cv-425-TFM-B |
| | ) | |
| STEPHEN BILLY, et. al., | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are: (1) the *Motion to Dismiss Amended Complaint and Incorporated Brief* (Doc. 29, filed April 10, 2025) filed by Defendant Stephen Billy, District Attorney for Escambia County; and (2) *Defendants' Partial Motion to Dismiss* (Doc. 30, filed April 10, 2025) filed by Defendants Sheriff Heath Jackson, Deputy Steven Derek Lowry, Deputy Matthew Rabren, and Deputy Arthur Odom.

Plaintiffs oppose the motions (Docs. 39, 40) and Defendants filed their replies in support of their respective motions.  (Docs. 43, 46).  For the reasons detailed below, the *Motion to Dismiss Amended Complaint* (Doc. 29) filed by District Attorney Stephen Billy is **GRANTED  in part** and **DENIED in part**, and the *Defendants' Partial Motion to Dismiss* (Doc. 30) filed by Defendants Sheriff Heath Jackson, Deputy Steven Derek Lowry, Deputy Matthew Rabren, and Deputy Arthur Odom is **GRANTED in part** and **DENIED in part**.

## I. PARTIES, JURISDICTION, AND VENUE

Plaintiffs Sherry Digmon (hereinafter "Digmon"), Cynthia Jackson ("Cindy Jackson"), Veronica Ashley Fore ("Fore"), and Don Fletcher ("Fletcher"), allege the defendants violated their First and Fourth Amendment rights and conspired to violate their civil rights as part of a scheme

to retaliate against the Escambia County School Board Superintendent's political opponents and detractors. *See generally* Doc. 25. Named as defendants are District Attorney Stephen Billy of the 21st Judicial District (in his individual capacity) ("D.A. Billy"), as well as Sheriff Heath Jackson (in both his official and individual capacities), Sheriff's Deputy Arthur Odom (in his individual capacity), Sheriff's Deputy Kevin Durden (in his individual capacity), Sheriff's Deputy Matthew Rabren (in his individual capacity), and Sheriff's Deputy Steven Dereck Lowry (in his individual capacity), all of the Escambia County Sheriff's Office. *Id.*

Plaintiffs bring their claims pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. The Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 (federal question). Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the events that gave rise to the claims in this matter occurred in this District. No party contests jurisdiction or venue.

## II.    BACKGROUND

### A.    Factual Background[1]

Sherry Digmon and Cindy Jackson are members of the Escambia County School Board, while Ashley Fore serves as the Board's payroll supervisor and records custodian. Doc. 25 at ¶¶ 10-12. Fletcher is a journalist who works for *Atmore News*, which Digmon co-owns. *Id.* at ¶¶ 13, 187. The trouble began when Digmon and Cindy Jackson were among those who voted not to extend the employment contract of Escambia County School Board Superintendent Michele

---

[1] The facts presented in the "Factual Background" section of this Memorandum Opinion and Order are based on the factual allegations contained in the 537-paragraph Amended Complaint (the operative complaint), which the Court must assume are true for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). See *United States v. Gaubert*, 499 U.S. 315, 327 (1991). Likewise, on a "facial attack" under Rule 12(b)(1), "a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion—the court must consider the allegations of the complaint to be true." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (citation omitted).

McClung at an August 30, 2023, School Board meeting. *Id.* at ¶¶ 35-56.   In response, Superintendent McClung's allies, led by D.A. Billy and Sheriff Jackson, "began plotting to shut down any opposition to retaining McClung." *Id.* at ¶ 66.  D.A. Billy and Sheriff Jackson, who both had close relationships with Superintendent McClung, accused Cindy Jackson and her husband of spreading rumors that Superintendent McClung was going to be arrested in connection with negative findings in the State's audit of the School Board. *Id.* at ¶¶ 24, 68, 81.

D.A. Billy and Sheriff Jackson spoke about their plans to retaliate against Superintendent McClung's opponents at a local GOP meeting on September 18, 2023, where Sheriff Jackson told attendees he would arrest McClung's detractors on a Friday so that they could not bail out until Monday and would have to "eat his hotdogs all weekend." *Id.* at ¶¶ 71, 75.  After the meeting, Sheriff Jackson told a community member that if the vote for McClung "did not go the way it should," "the wrath would be coming down on some school board members." *Id.* at ¶76.

On September 19, 2023, D.A. Billy issued a subpoena to the School Board directed to "Rochelle Richardson and/or Ashley Fore," as the School Board's records custodians, which Sheriff Jackson personally served on Fore.  Doc. 25 at ¶¶ 87, 91, and 99.  The subpoena sought the following from the School Board: "certified copies of any and all checks written to employees and labeled as 'COVID' payments or 'COVID BONUS' for the years 2020-23." *Id.* at ¶ 100.  The subpoena did not state it was confidential or was issued by a grand jury or otherwise could not be shared. *Id.* at ¶ 120.  The bonuses referenced were supplemental payments authorized to seven Board employees from the prior administration. *Id.* at ¶ 101.  Superintendent McClung told a colleague that the subpoena was related to a complaint by a School Board member and that she had discussed the subpoena with Sheriff Jackson and D.A. Billy. *Id.* at ¶ 122.  McClung told the colleague the subpoena was one of several, but Sheriff Jackson was targeting the prior

administration. *Id.* McClung requested a copy from Fore and, while reading it in front of her, stated that it was not worded exactly how it should have been. *Id.* at ¶¶ 109-113.

Fore sent a copy of the subpoena to the School Board's Chief School Financial Officer to whom the subpoena was directed, Rochelle Richardson. Doc. 25 at ¶¶ 115-116. Rochelle Richardson forwarded a copy to Cindy Jackson who, in turn, sent a copy to Digmon and the other Board members who voted not to renew McClung's contract. *Id.* at ¶¶ 117-119. Digmon forwarded a copy to Don Fletcher. *Id.* at ¶ 121.

On September 21, 2023, D.A. Billy sent a letter to each School Board member, on his official letterhead, voicing his concern over statements being made in the community about the audit. Doc. 25 at ¶ 124. D.A. Billy wrote that he had spoken to the auditors and "there was nothing that should be presented to a Grand Jury" before warning that he "ha[d] complete control of the Grand Jury in Escambia County, Alabama" but at some point he might bring other matters before the grand jury that he was "not at liberty to discuss." *Id.* at ¶ 127. D.A. Billy's letter warned that any investigation he conducted "would be protected Grand Jury information and a Class C felony if divulged by a Board Member." Doc. 25 at ¶ 129. The letter defended Superintendent McClung's accomplishments and character and went on to chastise board members for "play[ing] politics" and state that it was his opinion that a failure to renew McClung's contract was not in the best interest of the students. *Id.* at ¶ 132.

On October 12, 2023, D.A. Billy gave prepared remarks at beginning of the School Board meeting in which he praised Superintendent McClung, criticized Board members who said negative things about McClung in the community, and "warned the Board that a vote against McClung was against the law." Doc. 25 at ¶ 135. D.A. Billy threatened to retaliate against anyone who opposed Superintendent McClung, stating, "I don't control much, but I do control the grand

jury of this County" and warning that, although McClung's actions would not be brought before the grand jury, "there other matters that *will* be brought before a grand jury." *Id.* at ¶¶ 140-41. D.A. Billy said he was in possession of statements and affidavits concerning public speech by Board members who were "out telling something that just isn't so." *Id.* at ¶ 143. D.A. Billy recited the statutory duties of school board members and reminded them of their oaths of office. *Id.* at ¶ 145. D.A. Billy concluded, "[s]o my recommendation as district attorney and my history of working with this woman is to renew her contract." *Id.* at ¶ 146.

After the remarks by D.A. Billy and others, the Board again voted 4-3 against renewing Superintendent McClung's employment contract. Doc. 25 at ¶¶ 147-151. Board members and local politicians who supported McClung spoke out against Cindy Jackson and Digmon following the vote, saying they were running a "propaganda campaign" and should be ashamed of themselves. *Id.* at ¶¶ 154-161. Sheriff Jackson commented to meeting attendees that Cindy Jackson would never get reelected in Escambia County. *Id.* at ¶ 160.

At some point, D.A. Billy subpoenaed Digmon's phone records to see how frequently she talked to Cindy Jackson. Doc. 25 at ¶ 166. On October 20, 2023, Deputy Arthur Odom, "at the instruction of" D.A. Billy and Sheriff Jackson, sought and obtained warrants to seize and search Digmon's and Cindy Jackson's cell phones. *Id.* at ¶ 165. Deputy Odom's warrant application stated that D.A. Billy subpoenaed Digmon's phone records and saw that Digmon exchanged 40 phone calls with Cindy Jackson from September 11 to September 28. *Id.* at ¶170. The application further stated that "it is believed that Digman [sic] and Jackson held private conversations regarding the vote and outcome of the Superintendent vote" in violation of Alabama's Open Meetings Act. *Id.* at ¶¶ 173-74. The search warrant for Cindy Jackson's phone stated: "It has also been reported Cynthia Jackson has made public statements about certain Grand Jury Indictments

that have not yet occurred which is a violation of Alabama Code 12-16-214(4)[ ]" and that the statements were believed to be on her cell phone. *Id.* at ¶¶ 183, 185.

A local magistrate signed off on the warrants, which were executed by the Sheriff's Office on October 23, 2023. Doc. 25 at ¶ 186. Deputy Odom and another officer seized Digmon's phone while she was visiting someone at the hospital. *Id.* at ¶¶ 187-88. There were no limits on the scope of the warrant restricting the applications that could be checked and no temporal limitations or keyword search or preview search limitations to ensure officers viewed only responsive files. *Id.* at ¶ 180. Next, Deputy Odom called Cindy Jackson and requested she come to the station to answer a question, while assuring her she was not under investigation. *Id.* at ¶ 190. When Cindy Jackson arrived, Deputy Lowry seized her phone while handing her a warrant. *Id.* at ¶ 191. Sheriff Jackson sent the phones to Jackson, Alabama, so that the phones' contents could be downloaded with no restrictions on scope. *Id.* at ¶ 192. The phones were returned eight days later. *Id.* at ¶ 193.

On October 25, 2023, the *Atmore News* published an article by Fletcher titled, "BOE investigations" concerning events from the October 12 Board meeting, D.A. Billy's remarks at the meeting, and the September 19 subpoena. Doc. 25 at ¶¶ 197-98. The article stated that the *Atmore News* had obtained a copy of the September 19 subpoena and that D.A Billy confirmed he was conducting a criminal investigation into the Board's handling of COVID relief funds. *Id.* at ¶¶ 200-01.

The following day, Deputies Arthur Odom and Kevin Durden brought Ashley Fore to the Sheriff's Office for questioning. Doc. 25 at ¶ 203. During questioning, Fore asked if she was free to leave and walked back to her office, with Deputies Odom and Durden following behind in their truck. Doc. 25 at ¶¶ 206-207. At her office, the deputies told Fore they needed to take her cell

phone as part of their investigation.  *Id.* at ¶ 208.  She asked the deputies if they needed a warrant or subpoena, but they told her they did not need a warrant.  *Id.* at ¶209.  She cooperated and handed over her phone and password, feeling like she had no choice.  *Id.* at ¶¶ 212-213.  The Sheriff's Office downloaded all of the data off Fore's phone and kept possession of the phone until after her case was dismissed, or a period of about six months.  *Id.* at ¶ 215.  Plaintiffs allege D.A. Billy and Sheriff Jackson "planned to have Sheriff Jackson's deputies seize [Fore's] cell phone" and that the deputies agreed to carry out the warrantless seizure.  *Id.* at ¶¶ 443-44.

The next day, October 27, 2023, Fore was arrested for revealing grand jury evidence in violation of Alabama Code § 12-16-215 pursuant to a sworn criminal complaint from Deputy Odom that Fore "did on or about September 19, 2023, being a past or present grand juror, grand jury witness, or grand jury reporter, unlawfully and willfully . . . disclosed . . . Grand Jury Investigation to member of the media which was before the grand jury of Escambia County, Alabama."  Doc. 25 at ¶ 225.  However, Fore was not a grand juror, grand jury witness, or grand jury reporter, and no grand jury had been convened when D.A. Billy himself issued and signed the September 19 subpoena, which Fore shared only with Rochelle Richardson and not with the media.  *Id.* at ¶¶ 227-235.  Plaintiffs allege "the purported basis for [Fore's] arrest was entirely fabricated by DA Billy, Sheriff Jackson, and Deputy Odom who swore to the criminal complaint."  *Id.* at ¶ 239.

Deputy Odom and Deputy Rabren arrested Fletcher at the *Atmore News* office that same day for revealing grand jury secrets.  Doc. 25 at ¶¶ 251-53, 256.  Plaintiffs allege the arrest was pursuant to a "facially invalid" warrant.  *Id.* at ¶ 524.  A fellow journalist had warned Fletcher before his arrest that D.A. Billy had revealed information about his grand jury investigation into Fletcher and Digmon and had bragged about his plans to have them arrested.  *Id.* at ¶¶ 254-255.

The fellow journalist warned Fletcher of his suspicion that Fletcher would be arrested "for that article [he] wrote." *Id.* at ¶ 255.

Following Fletcher's arrest, Deputies Odom and Rabren arrested Digmon for revealing grand jury secrets by publishing Fletcher's article. Doc. 25 at ¶¶ 265-267. The criminal complaint signed by Deputy Odom alleged: "On or about October 25, 2023, being a past or present grand jury, grand jury witness, or grand jury reporter, unlawfully . . . disclosed . . . or caused to be disclosed . . . information pertaining to a grand juror's question . . . to-wit: approved an article containing Grand Jury Investigation information and allowed the article to be printed in the Atmore News which was before the grand jury of Escambia County, Alabama." *Id.* at ¶ 272. However, Digmon was not a grand juror, a grand jury witness, or a grand jury reporter, and she was not privy to grand jury secrets. *Id.* at ¶¶ 273-274. Digmon and Fletcher requested a preliminary hearing, which was set for December 4, 2023. *Id.* at ¶ 292.

Digmon was then arrested a second time on November 1, 2023, following her indictment for ethics violations. Doc. 25 at ¶ 293. D.A. Billy had convened a grand jury, which issued a two-count indictment charging Digmon with using her position on the School Board for financial gain by selling the Board ad space in the *Atmore News* and also with obtaining "U.S. currency for payment of advertising from a subordinate to-wit: Superintendent John Knott and/or Chief School Financial Officer Julie Madden." *Id.* at ¶¶ 295-96, 304. The School Board had purchased ad space in the *Atmore News* both before and after Digmon's tenure on the Board, and the Board even hired outside counsel in 2022 to obtain an ethics opinion from the Assistant General Counsel for Alabama's Ethics Commission to confirm the ad sales were lawful. *Id.* at ¶¶ 298-301. Digmon

surrendered herself to the jail and was booked and released on bond. *Id.* at ¶¶308-312.[2]

Plaintiffs allege D.A. Billy "used the grand jury's investigatory function to investigate [Digmon]," including "upon information and belie[f]" subpoenaing the Board for records and speaking to a Board member, "to create a pretextual basis to remove her from the School Board." Doc. 25 at ¶¶ 314-315. On October 27, 2023, D.A. Billy filed a bill of impeachment in the Circuit Court of Escambia County stating Digmon should be removed from office for willful neglect of office, corruption in office, and crime of moral turpitude, citing her vote against Superintendent McClung's contract renewal, her not publishing favorable stories about McClung, her failure to abstain from voting to approve payments to her own business, and her being the only Board member aware of the ad sales. *Id.* at ¶¶ 316-322. The District Attorney in Escambia County had never before impeached anyone. *Id.* at ¶ 325.

A grand jury returned an indictment for Cindy Jackson's arrest on December 1, 2023. Doc. 25 at ¶ 330. She was charged with corruptly obtaining grand jury information, "to wit: obtained and disclosed information in a grand jury subpoena, in violation of § 12-16-215 of the Code of Alabama." *Id.* at ¶ 332. However, Cindy Jackson was not a grand juror, witness, or reporter, and was not aware of grand jury secrets. *Id.* at ¶334. Her attorney negotiated her surrender to the Sheriff's Office, after which she was arraigned. *Id.* at ¶¶ 339-342.

The grand jury also returned indictments for Fletcher and Digmon that same day for the same charge as the October criminal complaints—revealing grand jury secrets. Doc. 25 at ¶¶ 344-345. The indictments caused the court to cancel the preliminary hearing set for December 4, 2023,

---

[2] Although Digmon surrendered herself to the jail, for ease of reference the Court refers to this as Digmon's second arrest. D.A. Billy does not dispute that Digmon's voluntary surrender following her indictment, as opposed to being formally arrested, may still constitute a seizure. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994) ("[The defendant's] surrender to the State's show of authority constituted a seizure for the purposes of the Fourth Amendment.").

and prevented them from challenging the basis for their arrests. *Id.* at ¶ 349.

Plaintiffs allege Digmon was arrested a third time on February 12, 2024, purportedly because D.A. Billy reduced her bond and she had to be reprocessed. Doc. 25 at ¶¶ 361-366. The Sheriff's Office told Digmon's attorney that she needed to bring some paperwork to the jail, but when she arrived she was told she had to have her mugshot and fingerprints taken again because was being arrested. *Id.* at 362-364.

On February 21, 2024, D.A. Billy recused himself from all of the criminal cases against Plaintiffs, stating in the recusal motion that he had "both a legal and personal conflict." *Id.* at ¶¶ 369-70. D.A. Billy dismissed the impeachment case against Digmon on February 22, 2024. *Id.* at ¶ 329. Following his recusal, the Alabama Attorney General's Office took over the cases against Plaintiffs and dismissed them with prejudice 17 days later. *Id.* at ¶ 373.

**B.     Procedural History**

Plaintiffs filed their original complaint herein on November 20, 2024. Doc. 1. D.A. Billy filed a motion to dismiss the original Complaint on the basis of absolute prosecutorial immunity. *See* Doc. 20, filed January 23, 2025. Defendants Sheriff Heath Jackson, Arthur Odom, Kevin Durden, Matthew Rabren, and Steven Dereck Lowry filed a partial motion to dismiss Counts II, III, IV, and V pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). *See* Doc. 21, filed January 23, 2025. The Court determined the original complaint was a shotgun pleading that failed to comply with Fed. R. Civ. P. 8(a) and ordered the Plaintiffs to file an amendment by March 13, 2025, in which event the pending motions would be rendered moot. *See* Doc. 24, Order dated January 29, 2025.

Plaintiffs subsequently filed their Amended Complaint on March 13, 2025. Doc. 25. Plaintiffs' Amended Complaint asserts the following claims, of which the counts and parties at

issue in these motions are set forth in bold typeface:

| Count | Plaintiffs | Defendants |
| --- | --- | --- |
| **Count I: Retaliation in violation of the First Amendment** | **Sherry Digmon**<br>**Cindy Jackson**<br>**Don Fletcher** | **District Attorney Stephen Billy**<br>Sheriff Heath Jackson<br>Deputy Arthur Odom<br>(all in their individual capacities) |
| **Count II: Retaliation in violation of the First Amendment** | **Sherry Digmon**<br>**Cindy Jackson**<br>**Don Fletcher** | **Sheriff Heath Jackson**<br>**(in his official capacity)** |
| **Count III: Fourth Amendment Violation (with subparts)**<br><br>**Seizure of Ashley Fore's cell phone** | **Ashley Fore** | **District Attorney Stephen Billy**<br>Sheriff Heath Jackson<br>Deputy Arthur Odom<br>Deputy Kevin Durden<br>(individual capacities) |
| **Seizure of Sherry Digmon's and Cindy Jackson's Phones** | **Sherry Digmon**<br>**Cindy Jackson** | **District Attorney Stephen Billy**<br>Sheriff Heath Jackson<br>Deputy Arthur Odom<br>**Deputy Steven Dereck Lowry**<br>(individual capacities) |
| **Plaintiffs' Arrests** | **Sherry Digmon**<br>**Cindy Jackson**<br>**Ashley Fore**<br>**Don Fletcher** | **District Attorney Stephen Billy**<br>**Sheriff Heath Jackson**<br>**Deputy Arthur Odom**<br>**Deputy Matthew Rabren**<br>(individual capacities) |
| **Count IV: Violation of the Fourth Amendment** | **All Plaintiffs** | **Sheriff Heath Jackson**<br>**(in his official capacity)** |
| **Count V: Civil Rights Conspiracy** | **All Plaintiffs** | **District Attorney Stephen Billy**<br>Sheriff Heath Jackson<br>Deputy Arthur Odom<br>Deputy Kevin Durden<br>Deputy Steven Dereck Lowry<br>Deputy Matthew Rabren<br>(individual capacities) |

Doc. 25 at ¶¶381-529.  Plaintiffs seek compensatory, punitive, and nominal damages, in addition

to attorney's fees, costs, and expenses.  Doc. 25 at ¶¶535-36.  The operative complaint also seeks relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§2201-02, as well as attorney's fees and costs pursuant to 42 U.S.C. § 1988.  Doc. 25 at ¶7.  Plaintiffs' prayer for relief includes a request that the Court declare as follows: the Defendants' conduct violated the Plaintiffs' First and Fourth Amendments rights; the Escambia County Sheriff's Office's official policies of seizing persons and property without probable cause, as applied to the Plaintiffs, violated the Fourth Amendment; and the individual defendants engaged in a civil conspiracy to violate—and did violate—Plaintiffs' constitutional rights.  Doc. 25 at ¶¶530-534.

The Court denied as moot the Defendants' prior motion to dismiss and partial motion to dismiss the original complaint.  Doc. 26.  On April 10, 2025, D.A. Billy filed the subject *Motion to Dismiss Amended Complaint* on the basis of absolute immunity.  Doc. 29.  Plaintiffs oppose the motion, and Defendant Billy filed a reply in support of his motion.  Docs. 39, 46.

Also on April 10, 2025, Defendants Sheriff Jackson, Deputy Lowry, Deputy Rabren, and Deputy Odom filed the subject *Defendants' Partial Motion to Dismiss*.  Doc. 30.  Defendant Sheriff Heath Jackson moves to dismiss Counts II and IV of Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1), as well as Sherry Digmon's Count III arrest claim, in part, pursuant to Fed. R. Civ. P. 12(b)(6). Deputy Steven Dereck Lowry moves to dismiss Sherry Digmon's Count III claim pursuant to Fed. R. Civ. P. 12(b)(6).  Deputy Matthew Rabren moves to dismiss Veronica Ashley Fore's and Cynthia Jackson's claims against him in Count III, as well as Sherry Digmon's Count III arrest claim, in part, pursuant to Fed. R. Civ. P. 12(b)(6).  Deputy Arthur Odom moves to dismiss Sherry Digmon's Count III arrest claim, in part, pursuant to Fed. R. Civ. P. 12(b)(6).  Plaintiffs oppose the partial motion to dismiss, and Defendants filed a reply in support of their motion.  Docs. 40 and 43.

Both motions are fully briefed and ripe for review, and the Court finds oral argument unnecessary.

### III.    STANDARD OF REVIEW

**A.    Fed. R. P. 12(b)(1) – Lack of Subject Matter Jurisdiction**

A party may move to dismiss a complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). "A sovereign immunity argument under the Eleventh Amendment implicates the Rule 12(b)(1) jurisdictional standard." *Strong v. Dallas Cnty. Comm'n*, Civ. Act. No. 2:24-CV-105-TFM-B, 2025 WL 913456, *2, U.S. Dist. LEXIS 55523 (S.D. Ala. Mar. 25, 2025) (citing *Bennett v. United States*, 102 F.3d 486, 488 n.1 (11th Cir. 1996) and *Culverhouse v. S. Union Cmty. College*, Civ. Act. No. 3:21-cv-121-RAH-SMD, 2021 WL 2417154, *2, 2021 U.S. Dist. LEXIS 110741 (M.D. Ala. June 14, 2021)). The burden of proof for a Fed. R. Civ. P. 12(b)(1) motion is on the party averring jurisdiction. *Master Marine, Inc. v. M/V Gee's Bend Ferry*, Civ. Act. No. 1:19-CV-65-TFM-M, 2019 WL 13116424, *2, 2019 U.S. Dist. LEXIS 241202 (S.D. Ala. Nov. 26, 2019) (citing *Gilmore v. Day*, 125 F. Supp. 2d 468, 470 (M.D. Ala. 2000), in turn citing *Thomas v. Gaskill*, 315 U.S. 442, 446 (1942)). Where "a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

"Attacks on subject matter jurisdiction can be either 'facial' or 'factual.'" *Makro Cap. of Am., Inc. v. UBS AG*, 543 F.3d 1254, 1258 (11th Cir. 2008). "Facial attacks" on the complaint "require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (citations omitted).

The Court is "not required to accept mere conclusory allegations as true, nor are we required to accept as true allegations in the complaint that are contrary to factual details presented in the exhibits." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007). In contrast, "factual attacks" challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Lawrence*, 919 F.2d at 1529. (citation omitted).

**B.      Fed. R. Civ. P. 12(b)(6) – Failure to State a Claim**

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a motion to dismiss an action on the ground that the allegations in the complaint fail to state a claim upon which relief can be granted. "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (per curiam) (quoting *GSW, Inc. v. Long Cty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). The court must draw "all reasonable inferences in the plaintiff's favor." *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

The court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The U.S. Supreme Court has suggested that courts adopt a "two-pronged approach" when considering motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). Importantly, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the

plaintiff would ask the court to infer." *Id.* (quoting *Iqbal*, 556 U.S. at 682).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S at 678, (quoting *Twombly*, 550 U.S at 556). Unless the plaintiffs have "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570. Further, "[a] complaint is subject to dismissal for failure to state a claim 'when its allegations, on their face, show that an affirmative defense bars recovery on the claim,' " *Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008) (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003)).

## IV.    DISCUSSION AND ANALYSIS – DISTRICT ATTORNEY BILLY

### A.    Absolute Prosecutorial Immunity

D.A. Billy moves to dismiss the claims against him in the Amended Complaint on the basis of absolute prosecutorial immunity. "[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." *Imbler v. Pachtman,* 424 U.S. 409, 431 (1976). "[A] prosecutor is absolutely immune to suits for money damages unless the acts or omissions giving rise to the plaintiff's claim are outside the "scope and territorial jurisdiction of his office." *Lloyd v. Foster*, 298 F. App'x 836, 839 (11th Cir. 2008)[3] (citing *Elder*

---

[3] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2 (effective Dec. 1, 2025); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

*v. Athens–Clarke County, Ga.,* 54 F.3d 694, 695 (11th Cir.1995)).   The Supreme Court "has employed a 'functional' approach to determine whether an individual is entitled to absolute prosecutorial immunity." *Kassa v. Fulton County*, 40 F.4th 1289, 1292 (11th Cir. 2022) (citing *Burns v. Reed*, 500 U.S. 478, 486 (1991)).  "A prosecutor is entitled to absolute immunity for 'acts undertaken ... in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State.'" *Mastroianni v. Bowers*, 173 F.3d 1363, 1366 (11th Cir. 1999) (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 273 (1993).  This includes "prosecutorial conduct before grand juries, statements made during trial, examination of witnesses, and presentation of evidence in support of a search warrant during a probable cause hearing." *Rehberg*, 611 F.3d at 838 (citations omitted).

"On the other hand, as the function test of *Imbler* recognizes, the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor." *Buckley*, 509 U.S. at 273.  A prosecutor is not entitled to absolute immunity when he "performs the investigative functions normally performed by a detective or police officer." *Buckley*, 509 U.S. at 273. "A prosecutor functions as an investigator when he 'search[es] for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested.'" *Rivera v. Leal*, 359 F.3d 1350, 1353 (11th Cir. 2004) (quoting *Buckley,* 509 U.S. at 273).  Absolute immunity does not apply "when a prosecutor gives advice to police during a criminal investigation," "makes statements to the press," or "acts as a complaining witness in support of a warrant application." *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009) (citations omitted).  "If a prosecutor functions in a capacity unrelated to his role as an advocate for the state, he is not protected by absolute

immunity but enjoys only qualified immunity."[4] *Rehberg*, 611 F.3d at 838 (citing *Kalina v. Fletcher*, 522 U.S. 118, 121 (1997)).

A prosecutor's motives are not relevant to the functional analysis. *See Captain Jack's Crab Shack, Inc. v. Cooke*, 2022 U.S. App. LEXIS 26523, *24-25, 2022 WL 4375364, *7 (11th Cir. 2022) (per curiam) (unpublished) ("While a prosecutor's motives may be relevant to whether a civil rights plaintiff has stated a claim, they are not relevant to determining whether absolute immunity applies."). "As the Supreme Court explained in *Imbler* [*v. Pachtman*, 424 U.S. 409 (1976)], absolute immunity hinges on the "functional nature of the [prosecutor's] activities," not on their personal motivations, and so prosecutors may be immune even when their actions are "malicious or dishonest.'" *Id.*, 2022 U.S. App. LEXIS 26523, *24-25, 2022 WL 4375364, at *7 (quoting *Imbler*, 424 U.S. at 427, 430). The functional approach "makes clear that absolute prosecutorial immunity 'is not grounded in any special esteem for those who perform these functions, and certainly not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself.'" *Kassa*, 40 F.4th at 1292 (citing *Kalina v. Fletcher*, 522 U.S. 118, 127, (1997)).

At the outset, the Court observes that Plaintiffs concede in their response that "DA Billy's work of securing grand-jury indictments and his participation in the criminal proceedings" are "traditional prosecutorial acts" for which D.A. Billy has absolute immunity. Doc. 39, pp. 10-11.[5] Plaintiffs concede in their response that D.A. Billy has absolute immunity for the following: securing Digmon's indictment on ethics charges on October 27, 2023; filing the impeachment

---

[4] D.A. Billy did not raise qualified immunity in his Motion to Dismiss, so the Court has not undertaken that analysis here.

[5] The Court notes that its references to document page numbers are reference to the electronic filing PDF page number, and not the page number at the bottom of the pleading. Some of the parties' pleadings have cover pages that alter the pagination.

against Digmon on October 27, 2023; securing indictments of Cindy Jackson, Digmon, and Fletcher on December 1, 2023, on the charge of revealing grand jury secrets; and reducing Digmon's bond "to precipitate her third arrest" on February 12, 2024. Doc. 39, pp. 22-23. Plaintiffs argue that the remaining actions by D.A. Billy were in "in his role as investigator before he initiated the judicial phase of the case." *Id.* at p. 2.

**B.    Count I – Retaliation in violation of the First Amendment**

"A constitutional claim brought pursuant to § 1983 must begin with the identification of a specific constitutional right that has allegedly been infringed." *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019). In Count I, Digmon, Cindy Jackson, and Fletcher allege retaliation for their protected speech in violation of the First Amendment by D.A. Billy, Sheriff Jackson, and Deputy Odom. Doc. 25 at ¶¶ 381-420. They allege D.A. Billy, Sheriff Jackson, and Deputy Odom retaliated against them for exercising their First Amendment rights by: (1) arresting them; (2) seizing Digmon's and Cindy Jackson's phones; and (3) impeaching Digmon. *Id.* at ¶ 385. Plaintiffs allege that D.A. Billy and his co-conspirators "conducted a sham investigation into McClung's predecessors" as a "pretext[ ] to arrest Digmon, Cindy Jackson, and Fletcher, seize Digmon's and Cindy Jackson's phones, and impeach Digmon." *Id.* at ¶ 388. Plaintiffs allege this included "misus[ing] the grand jury's investigatory function to gather evidence." *Id.* at ¶ 403.

The First Amendment provides that "Congress shall make no law ... abridging the freedom of speech, or ... the right ... to petition the government for a redress of grievances." U.S. CONST. amend. I. "The Amendment protects not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1288 (11th Cir. 2019) (citation and internal quotations omitted). To state a § 1983 First Amendment retaliation claim, a plaintiff generally must show: (1) "she engaged

in constitutionally protected speech"; (2) "the defendant's retaliatory conduct adversely affected that protected speech"; and (3) "a causal connection exists between the defendant's retaliatory conduct and the adverse effect on the plaintiff's speech." *Id.* at 1289 (citation omitted).

### 1.    Events prior to convening the grand jury

#### a.    The September 19 subpoena

Plaintiffs argue that D.A. Billy used his investigatory powers to issue a subpoena to the School Board, which subpoena was "bait" to "form the pretense for Plaintiffs' arrests just over a month later" for the "fake crime of sharing his subpoena." Doc. 39, p. 4. While it is generally true that "entrapping someone into committing a prosecutable offense undeniably constitutes investigative behavior" excepted from absolute prosecutorial immunity, *see Mullinax v. McElhenney*, 817 F.2d 711, 715 (11th Cir. 1987), Plaintiffs fail to plead sufficient facts to permit the Court to reasonably infer that the September 19 subpoena was investigative "bait" to lure the Plaintiffs into publishing and disseminating the subpoena or otherwise part of a retaliatory scheme to arrest the Plaintiffs, as well as seize their phones.

The September 19, 2023, subpoena D.A. Billy issued to the School Board allegedly sought "certified copies of any and all checks written to employees and labeled as 'COVID' payments or 'COVID BONUS' for the years 2020-2023." Doc. 25 at ¶ 100. The September 19 subpoena was not directed to Digmon, Cindy Jackson, or Fletcher,[6] and did not seek records from Digmon, Cindy Jackson, or Fletcher. *Id.* The Amended Complaint lacks any factual allegations that the September 19 subpoena targeted Plaintiffs or otherwise had any connection to them. Plaintiffs are not alleged

---

[6] Although the subpoena was directed to Ashley Fore as one of the Board's records custodians (Doc. 25 at ¶ 91), Fore does not assert a claim in Count I. The Court further notes that there is no allegation in the Amended Complaint that Fore was one of the superintendent's detractors or political opponents.

to be among the seven Board employees from the prior administration who received the at-issue COVID payments. *Id.* at ¶ 101.

Plaintiffs' allegations that the September 19 was a "trap" and "part of a sham investigation to help create the pretext to arrest Plaintiffs" (Doc. 25 at ¶ 88), are conclusory. *See* Doc. 25 at ¶ 88. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Excluding these conclusory allegations, the Amended Complaint lacks factual allegations to permit the Court to reasonably infer more than the "mere possibility of misconduct," that being the possibility that it was D.A. Billy's plan and prediction that: (1) Fore would provide a copy of the September 19 "bait" subpoena to her boss, Rochelle Richardson; (2) Richardson would then turn around and give a copy to Cindy Jackson; (3) Cindy Jackson would give a copy to Digmon; (4) Digmon would forward a copy to Fletcher; and (5) Fletcher would then publish a story about it in the *Atmore News*, all so D.A. Billy could conduct a retaliatory investigation and prosecute Digmon, Cindy Jackson, and Fletcher (who were not targets of the subpoena) for telling others about the subpoena. Doc. 25 at ¶¶ 115-121, 182, 198, 255-256, 327, 332.

The Plaintiffs' own allegations in their Amended Complaint undercut their position that the subpoena was intended as "bait." Plaintiffs allege "upon information and belief" that "the purpose of the subpoena was to create the impression that the prior administration—and not McClung—was responsible for any indiscretions and investigations surrounding the district's finances." *Id.* at 102. In addition to this "upon information and belief" allegation, Plaintiffs allege Superintendent McClung told a colleague (in a conversation about subpoenas) that Sheriff Jackson was targeting the prior administration. *Id.* at ¶ 122. The Amended Complaint does not contain factual allegations sufficient to a "raise a right to relief above the speculative level," *see Twombly*,

550 U.S. at 555, with respect to Plaintiffs' claim that D.A. Billy issued the September 19 subpoena as "bait" to investigate and trap the Plaintiffs.

#### b.    Seizure of Sherry Digmon's and Cindy Jackson's phones

The Amended Complaint states that a week after the second vote against Superintendent McClung, "on October 20, 2023, at the instruction of DA Billy and Sheriff Jackson, Deputy Arthur Odom sought and obtained warrants to seize and search [Digmon's] and Cindy [Jackson]'s cell phones."  Doc. 25 at ¶ 165.  The Amended Complaint goes on to state that D.A. Billy had previously "used his investigatory powers to subpoena [Digmon's] phone records to figure out how frequently she talked to Cindy on the phone."  *Id.* at ¶ 166.  Deputy Odom's warrant applications stated that D.A. Billy had subpoenaed Digmon's phone records and D.A. Billy saw that Sherry and Cindy exchanged 40 calls from September 11-28.  *Id.* at 170.  Odom stated the calls violated the Open Meetings Act and, additionally, as to Cindy Jackson, that it was believed she had made public statements (believed to be on her phone) about grand jury indictments that had not yet occurred.  *Id.* at ¶¶ 183-185.  A magistrate signed off on the warrants, which were executed by the Sheriff's Office.  *Id.* at ¶ 186.  Sheriff Jackson sent the phones to Jackson.  *Id.* at ¶ 192.

D.A. Billy argues that the allegation that Deputy Odom acted "at the instruction of DA Billy and Sheriff Jackson" is conclusory, but, even if the allegation were considered, D.A. Billy would have absolute immunity had he personally undertaken to obtain the search warrants for the phones, citing *Burns v. Reed*, 500 U.S. 478 (1991).  Doc. 29, p. 27.  In response, Plaintiffs assert that D.A. Billy's pre-grand-jury conduct was investigative and that the subpoena of Digmon's phone records was "the pretextual basis to seize Cindy [Jackson]'s and [Digmon's] phones."  Doc. 39, p. 15.  In response to D.A. Billy's contention that the allegation concerning Billy's involvement

was conclusory, Plaintiffs argue that the Amended Complaint contains other allegations that D.A. Billy was coordinating with Sheriff Jackson. Doc. 39, p. 18. They also generally assert, without citation to any specific allegations, that "the Sheriff's Office relied on DA Billy's legal theory—which he wrote down in a letter and publicized at the October 12 Board meeting." *Id.*

While it is true that in *Burns*, 500 U.S. at 487, the Supreme Court held that a prosecutor's appearance at a probable cause hearing as a lawyer for the State to examine a witness and support the application for a search warrant was "intimately associated with the judicial phase of the criminal process" and entitled to absolute immunity (in part because search warrants are judicial acts), the Court concludes that the unique facts here are distinguishable from *Burns*. Here, the Amended Complaint alleges D.A. Billy functioned outside of a prosecutorial role with respect to the seizure of Sherry's and Cindy's phones. The search warrant was predicated on D.A. Billy's prior subpoena for Digmon's phone records and the records produced in response thereto, which D.A. Billy shared with Deputy Odom, who in turn used the records to prepare the search warrant application. *Id.* at ¶ 511. One can reasonably infer from the recitations of Deputy Odom's warrant application that D.A. Billy was participating in an investigation of Digmon and Cindy Jackson and shared the results of his investigation with Deputy Odom. A prosecutor is not entitled to absolute immunity when he "performs the investigative functions normally performed by a detective or police officer." *Buckley*, 509 U.S. at 271; *see also Rivera v. Leal*, 359 F.3d 1350, 1353 (11th Cir. 2004) ("A prosecutor functions as an investigator when he searches for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested.") (citation and internal punctuation marks omitted). The motion to dismiss is denied with respect to Sherry's and Cindy's claims for the seizures and searches of their cell phones in Count I.

c.    **Don Fletcher's Arrest #1**

D.A. Billy argues that Plaintiffs do not allege D.A. Billy had any involvement in Don Fletcher's arrest by sheriff's deputies, aside from the allegation that a fellow journalist warned Fletcher that D.A. Billy bragged about his plans to have Fletcher arrested. Doc. 29, p. 9; *see also* Doc. 25 at ¶¶ 251-264. Plaintiffs respond generally that the Amended Complaint contains other allegations that D.A. Billy was coordinating with Sheriff Jackson; the September 19 subpoena was "bait"; and "DA Billy's subpoenas were the factual basis for the warrants and arrests, and the Sheriff's Office relied on DA Billy's legal theory—which he wrote down in a letter and publicized at the October 12 Board meeting." Doc. 39, pp. 4, 18.

According to the Amended Complaint, Deputies Odom and Rabren arrested Fletcher for violating grand jury secrets in publishing the article about the September 19 subpoena. Doc. 25 at ¶¶ 252, 256. Plaintiffs allege the arrest was pursuant to a facially invalid warrant. *Id.* at ¶ 524. In addition to the allegations concerning D.A. Billy's retaliatory plans generally, the Amended Complaint states that D.A. Billy bragged about his plans to arrest Fletcher and Digmon and that he and Sheriff Jackson did not permit Fletcher to surrender himself to the Sheriff's Office rather than be arrested. *Id.* at ¶¶ 253-54.

Even assuming that the Amended Complaint as a whole contains sufficient allegations that D.A. Billy directed Fletcher's first arrest as part of D.A. Billy's retaliatory scheme to survive a motion to dismiss, the initiation of criminal proceedings and obtaining an arrest warrant are prosecutorial functions within the scope of absolute immunity, regardless of the prosecutor's improper motives. *See, e.g., Kalina v. Fletcher*, 522 U.S. 118, 129 (1997) (prosecutor had absolute immunity for filing information charging respondent with burglary and motion for an arrest warrant, but not for acting as a witness personally attesting to "Certificate for Determination of

Probable Cause" for arrest warrant); and *Fullman v. Graddick*, 739 F. 2d 553, 558-59 (11th Cir. 1984) (state attorney general was entitled to absolute immunity for claims he conspired with policy to unlawfully arrest the petitioner and signed an arrest warrant despite lack of probable cause).  *See also Serpentfoot v. Rome City Comm'n*, 426 F. App'x 884, 887 (11th Cir. 2011) (issuance of arrest warrants fell within prosecutor's role as advocate and entitled to absolute immunity); and *Ward v. Chafin*, 2023 WL 2661527, at *3, 2023 U.S. App. LEXIS 7326, at *7-8 (11th Cir. 2023) (prosecutor's "caus[ing] a warrant to issue for [the petitioner's] arrest" was "conduct intimately associated with the judicial phase of the criminal process").

Plaintiffs' argument that the September 19 subpoena was a trap to arrest Plaintiffs fails for the reasons previously addressed herein.  Further, there is no allegation that D.A. Billy served as a complaining witness with respect to the arrest warrant, gave legal advice to the officers, or otherwise acted in a non-prosecutorial role not subject to absolute immunity.  D.A. Billy's motion is due to be granted with respect to Don Fletcher's claim concerning his first arrest in Count I.

### d.      Sherry Digmon's Arrest #1

D.A. Billy argues the allegations of his involvement in Sherry Digmon's first arrest are conclusory and lacking further factual support, but that even if the Court were to consider the allegations there is no conduct that falls outside of the scope of prosecutorial immunity. Doc. 29, pp. 23-24. In ¶ 271 of the Amended Complaint, Plaintiffs allege that "[j]ust like with [Fore] and [Fletcher], DA Billy and Sheriff Jackson had [Digmon] arrested for revealing grand-jury secrets by publishing Don [Fletcher]'s article."  Doc. 25 at ¶ 271.  The Amended Complaint states that Deputy Odom signed the criminal complaint for Digmon's (first) arrest and that Deputies Odom and Rabren arrested her.  See Doc. 25. ¶¶ 265-284.  For the same reasons outlined above with respect to Fletcher's arrest and assuming for the sake of argument the Amended Complaint

contains sufficient allegations to show D.A. Billy's involvement in the arrest, the Court finds that Plaintiffs do not plausibly allege wrongful conduct by D.A. Billy unrelated to his role as prosecutor with respect to Sherry's first arrest.  D.A. Billy's motion is due to be granted with respect to Sherry Digmon's claim concerning her first arrest in Count I.

2.    **The grand jury and thereafter**

a.    **Grand jury as investigatory tool**

Plaintiffs attempt to characterize D.A. Billy's use of the grand jury as "investigatory" and cite to *Buckley v. Fitzsimmons*, 509 U.S. 259, 275 (1993), to argue that this falls outside the scope of absolute prosecutorial immunity.  Doc. 39, p. 19.  For example, Plaintiffs allege in the Amended Complaint that "DA Billy had convened a grand jury to investigate Sherry on two counts of ethics violations" and "DA Billy used the grand jury's investigative function to investigate Sherry for the purpose of gathering evidence and creating a pretextual basis to remove her from the School Board."  Doc. 25, ¶¶ 294, 314.  D.A. Billy argues these allegations are conclusory and without further factual support, but even if the Court were to consider them, there are no allegations of conduct by Billy that fall outside scope of absolute immunity. Doc. 29, p. 24.  D.A. Billy argues that a prosecutor's conduct before a grand jury is not the equivalent of "role and actions of a police officer," and that it would violate the secrecy of the grand jury to classify conduct before the grand jury as investigatory.  *Id.* at pp. 24, 29.

The only allegation in the Amended Complaint concerning investigation by the grand jury related to Sherry's ethics charges appears to be the allegation in ¶ 295 that "[o]n information and belief, DA Billy used the grand jury's investigative functions to subpoena records from the Board and interview at least one Board member as a 'witness.' "  Doc. 25 at ¶¶ 295, 315; *see also* Doc. 39, p. 19.  The Amended Complaint lacks any additional factual foundation to support this "on

information and belief" allegation; accordingly, the Court need not accept this allegation as true for purposes of its 12(b)(6) analysis. *See Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (declining to take as true the plaintiff's "upon information and belief allegation" Florida's supply of phenobarbital was expired, illegally obtained, or compounded where he did not allege "enough facts to nudge his claim that Florida possesses only expired, illegally obtained, or compounded pentobarbital across the line from conceivable to plausible.") (citation omitted).   Plaintiffs' Amended Complaint lacks factual support showing that D.A. Billy's actions before the grand jury fell outside his prosecutorial role and the scope of absolute immunity.

Plaintiffs' argument also lacks support in the law.  Initially the Court observes that the allegations in the Amended Complaint look nothing like *Buckley*, which concerned the issue of whether prosecutors were entitled to absolute immunity for a claim they conspired to manufacture false evidence linking the petitioner to a crime scene bootprint by expert shopping.  509 U.S. at 272.  The conduct in question in *Buckley* occurred at a time during the investigation when the prosecutors did not claim to have probable cause to arrest the petitioner or initiate judicial proceedings and *prior* to the convening of a special grand jury for the initial purpose of investigating the crime.  *Id.* at 274-275.[7]  The *Buckley* court found that the alleged fabrication of evidence occurred before the prosecutors were acting as advocates and was protected by only qualified immunity.  *Id.* at 275.  Although Plaintiffs contend that the Supreme Court held in

---

[7] The *Buckley* court described the "special grand jury" as follows:

> Thereafter, having failed to obtain sufficient evidence to support petitioner's (or anyone else's) arrest, respondents convened a special grand jury for the sole purpose of investigating the Nicario case. After an 8-month investigation, during which the grand jury heard the testimony of over 100 witnesses, including the bootprint experts, it was still unable to return an indictment.

*Buckley*, 509 U.S. at 263-64.

*Buckley* held that the use of a grand jury to subpoena expert witnesses was investigative and not protected by absolute immunity, *see* Doc. 39, p. 13 (citing 509 U.S. at 275), *Buckley* contains no such holding.  *See Buckley*, 509 U.S. at 275.  The *Buckley* court noted at the outset that acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings "must include the professional evaluation of evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." *Id.* at 273.

Plaintiffs point to no controlling authority for the proposition that that issuance of a grand jury subpoena is necessarily investigative and excepted from absolute immunity.  In *Burns v. Reed*, 500 U.S. 578 (1991), the Supreme Court recognized the widespread agreement in the appellate courts that prosecutors have absolute immunity in § 1983 actions for their conduct before a grand jury.  *Id.* at 490 n.6.  In *Mastroianni v. Bowers*, 173 F.3d 1363 (11th Cir. 1999), the Eleventh Circuit stated that any potential liability on the part of prosecutors "must derive from actions they took prior to the initiation of the grand jury proceeding."  *Id.* at 1366.  Additionally, in *Mullinax v. McElhenney*, 817 F.2d 711 (11th Cir. 1987), the Eleventh Circuit found that a "a prosecutor is entitled to absolute immunity for the factual investigation necessary to prepare a case, including interviewing witnesses before presenting them to the grand jury."  *Id.* at 715 (citation omitted). Plaintiffs assert that *Buckley* repudiated this statement in *Mullinax,* but they offer no authority for this contention, and the Court disagrees.  Plaintiffs fail to plausibly allege actions by D.A. Billy before the grand jury that fall outside the scope of absolute prosecutorial immunity, and the motion to dismiss is granted to the extent Plaintiffs claim D.A. Billy's misused the grand jury's investigatory function.

### b.    Grand jury prosecutions and impeachment

Plaintiffs concede D.A. Billy had absolute immunity for securing Sherry Digmon's indictment on ethics charges on October 27, 2023; filing the impeachment against Digmon on October 27, 2023; and securing indictments of Digmon, Cindy Jackson, and Don Fletcher on December 1, 2023, on the charge of revealing grand jury secrets.  Doc. 39, pp. 22-23.  The Court agrees that D.A. Billy has absolute immunity for these actions, and the motion to dismiss is granted as to these claims with prejudice.

### c.    Arrests of Sherry, Cindy, and Don following the grand jury indictments

Turning next to the arrests of Sherry Digmon (arrest #2), Cindy Jackson, and Don Fletcher (arrest #2) pursuant to the grand jury indictments, D.A. Billy argues that it follows from Plaintiffs' concession absolute immunity exists for securing the indictments of Digmon, Cindy Jackson, and Fletcher that D.A. Billy also has absolute immunity for the arrests pursuant to those grand jury indictments.  Doc. 46, p. 5.  The Court agrees.  *See Rivera v. Leal*, 359 F.3d 1350, 1353 (11th Cir. 2004) ("The prosecutorial function includes the initiation and pursuit of criminal prosecution.") (citing *Imbler* 424 U.S. at 431); *see also Reichle v. Howards*, 566 U.S. 658, 667-68 (2012) ("In a retaliatory prosecution case, the key defendant is typically not the prosecutor who made the charging decision that injured the plaintiff, because prosecutors enjoy absolute immunity for their decisions to prosecute."); and *Hart v. Hodges*, 587 F.3d 1288, 1295 (11th Cir. 2009) ("A prosecutor is immune for malicious prosecution.").

Any alleged involvement by Billy in Digmon's third arrest was likewise due to the continuance of his prosecution of Digmon.  According to the Amended Complaint, "[Digmon's] third arrest was, supposedly, to reprocess her after Billy had reduced her bond on his own initiative," but the "true purpose for [Digmon's] third arrest was to humiliate, degrade, and punish

her one last time before Billy finally admitted his conflicts of interest." Doc. 25 at ¶¶ 366-367. Plaintiffs concede D.A. Billy has immunity for reducing Digmon's bond "to precipitate her third arrest" on February 12, 2024. Doc. 39, pp. 22-23. These events occurred after Digmon's indictment and in D.A. Billy's pursuit of her criminal prosecution. The Amended Complaint lacks any allegation of conduct by D.A. Billy outside his prosecutorial role in connection with Digmon's third arrest.

              d.       **Summary on Count I**

To summarize with respect to Count I, D.A. Billy's motion to dismiss is due to be denied for the claims in Count I concerning the searches and seizures of Sherry Digmon's and Cindy Jackson's phones. The motion is due to be granted on the basis of absolute immunity for the remaining retaliation claims in Count I. To the extent Digmon, Cindy Jackson, and Fletcher assert a claim in Count I for their grand jury indictments, D.A. Billy has absolute immunity for: securing Digmon's indictment on ethics charges; securing indictments of Cindy Jackson, Fletcher, and Digmon on the charge of revealing grand jury secrets; and reducing Digmon's bond. D.A. Billy also has absolute immunity for filing the bill of impeachment against Digmon. Plaintiffs concede D.A. Billy has absolute immunity for these claims, and they are dismissed with prejudice. The other claims dismissed are done so without prejudice to repleading, including claims arising from Digmon's, Jackson's, and Fletcher's arrests.

"The court should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). Generally, "where a more carefully drafted compliant might state a claim, a plaintiff must be given at least one chance to amend." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). However, the district court need not allow amendment where it would be futile or where there has been undue delay or bad faith or repeated failure to cure errors. *Id.* Further,

"[a] district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002). The Court is mindful that it has already afforded Plaintiffs one opportunity to amend their Complaint to correct deficiencies related to shotgun pleading. *See* Doc. 24. Nonetheless, the Court cannot say that a second amendment would be futile or that Plaintiffs have been guilty of undue delay or bad faith, especially because the allegations carry extremely serious connotations. If the Plaintiffs can plead sufficient facts to overcome the deficiencies on absolute immunity, then they should go forward.

**C.    Count III – Fourth Amendment violations**

In Count III, all Plaintiffs assert claims against all Defendants for violation of their clearly established Fourth Amendment rights against unreasonable searches and seizures "in at least three ways: (1) the warrantless search and seizure of Ashley [Fore's] cell phone; (2) the search and seizure of Sherry [Digmon's] and Cindy [Jackson's] cell phones based on facially invalid warrants; and (3) Plaintiffs' arrests without probable cause." Doc. 25 at ¶ 435. There is significant overlap between the alleged searches and seizures that form the basis of Plaintiffs' claims in Count I and Count III.    For the reasons outlined above with respect to Count I: (1) the motion is due to be denied with respect to the claims in Count III concerning the search and seizures of Sherry's and Cindy's phones; and (2) D.A. Billy receives absolute immunity for Plaintiffs claims in Count III arising from Fletcher's, Digmon's, and Cindy Jackson's arrests. That leaves the claims related to the search and seizure of Fore's phone and her arrest.

**1.    Search and Seizure of Ashley Fore's phone**

D.A. Billy argues there is no allegation of his "direct involvement" in the seizure of

Ashley's phone.  Doc. 29, p. 5.  According to the Amended Complaint, Deputies Odom and Durden brought Fore in for questioning, followed her to her office after she asked to leave, and then told her they needed to take her cell phone as part of their investigation.  *Id.* at ¶¶ 204-208.  Plaintiffs allege Sheriff Jackson's office downloaded the data off Fore's phone and maintained possession of it.  *Id.* at ¶ 215.  Plaintiffs allege in Count III that D.A. Billy and Sheriff Jackson "planned to have Sheriff Jackson's deputies seize Fore's cell phone without probable cause or exigency" and that Deputies Odom and Durden agreed to carry out the seizure of her phone.  Doc. 25 at ¶¶ 443-444.  Plaintiffs allege D.A. Billy, Sheriff Jackson, Deputy Odom, and Deputy Durden had no evidence Fore had shared the September 19 subpoena with anyone.  *Id.* at ¶ 450.

Directing the officers to seize Fore's phone without a search warrant is not prosecutorial conduct protected by absolute immunity.  *See Fullman v. Graddick*, 739 F.2d 553, 559 (11th Cir. 1984) ("In this case, the only allegations not expressly barred by the doctrine of absolute prosecutorial immunity are those which claim that Graddick ordered, directed, and participated in searching plaintiff's trash without a proper search warrant, and that Graddick leaked false information to the press.").  The motion to dismiss is due to be denied with respect to this claim in Count III.

### 2.    Ashley Fore's Arrest

D.A. Billy argues that the allegations regarding his involvement in Fore's arrest are conclusory, but even if the Court were to consider the conclusory allegations, there is no allegation of conduct outside the scope of prosecutorial immunity.  Doc. 29, pp. 23-24.  In Count III, Plaintiffs allege D.A. Billy and Sheriff Jackson "ordered" Plaintiffs' arrests "in reliance on evidence that they compiled through DA Billy's subpoenas, grand jury investigation, and the searches that relied on the evidence from DA Billy's investigations."  Doc. 25 at ¶¶ 473, 477.  In the factual

background section of the Amended Complaint, Plaintiffs allege that Fore was arrested on October 27, 2023, for revealing grand jury secrets and that her attorney negotiated her surrender to the jail after they became aware that deputies went to their home demanding Fore come outside.  Doc. 25 at ¶¶ 218-224.  According to the Amended Complaint, Deputy Odom swore to the criminal complaint.  *Id.* at ¶ 225.

Even assuming that the Amended Complaint as a whole contains sufficient allegations that D.A. Billy directed Fore's arrest as part of his retaliatory scheme, the initiation of criminal proceedings and obtaining an arrest warrant are prosecutorial functions within the scope of absolute immunity, as explained above with respect to Fletcher's and Digmon's firsts arrests.  Plaintiffs fail to plausibly allege D.A. Billy acted outside of the judicial phase of the criminal process in connection with Ashley Fore's arrest.  The motion is due to be granted with respect to this claim.

### 3.    Summary on Count III

To summarize with respect to Count III, the motion is due to be denied as to the claims in Count III concerning the search and seizures of Fore's, Digmon's, and Cindy Jackson's phones.  However, the motion is due to be granted without prejudice to repleading on the basis of absolute immunity as to Plaintiffs' Fourth Amendment arrest claims in Count III.

### D.    Count V – Civil Rights Conspiracy

In Count V, all Plaintiffs assert claims against all defendants in their individual capacities for conspiring to violate Plaintiffs' First and Fourth Amendment rights with the "main goal" of arresting Plaintiffs.  Doc. 25 at ¶¶ 500, 522.  "Conspiring to violate another person's constitutional rights violates section 1983."  *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th Cir. 2002).  D.A. Billy argues that the only actions allegedly committed by him in furtherance of the

conspiracy were taken in his prosecutorial role, for which he has absolute immunity.  Doc. 29, p. 21.

The Eleventh Circuit has described the scope of absolute prosecutorial immunity in the context of conspiracy to violate a person's civil rights as follows:

> Lazarus can only be liable for conspiring to violate Rowe's rights if his agreement to join the conspiracy or conduct knowingly done in furtherance of it occurred while he was not in his prosecutorial role. Lazarus cannot not be held liable for conspiring to violate Rowe's rights by prosecuting him, because he is absolutely immune from liability for prosecuting Rowe, and, logically, "a person may not be prosecuted for conspiring to commit an act that he may perform with impunity." *Jones,* 174 F.3d at 1289 (quotation omitted).

> The question, then, is whether there is sufficient evidence to show that, at some time before he put on his prosecutor's hat, such as the time he was participating in the search, Lazarus was part of a conspiracy to deprive Rowe of his rights.

*Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1282 (11th Cir. 2002).

Here, Plaintiffs must show that "at some time before he put on his prosecutor's hat . . . [D.A. Billy] was part of a conspiracy to deprive [Plaintiffs] of their rights."  *Rowe*, 279 F.3d at 1282 (citation and internal quotation marks omitted).  Plaintiffs allege the unlawful acts to carry out the conspiracy included: the unlawful seizures of Fore's, Cindy Jackson's, and Digmon's phones; the arrests of Fore, Fletcher, and Digmon; the second arrest of Digmon; the arrest of Cindy Jackson; and the third arrest of Digmon.  Doc. 25, ¶ 527.  Plaintiffs allege the Defendants' acts in furtherance of the conspiracy violated Digmon's, Cindy Jackson's, and Fletcher's First Amendment rights when they were arrested, jailed, had their phones seized, and (for Digmon) impeached in retaliation for protected speech.  *Id.* at ¶ 528.  They allege the acts in furtherance of the conspiracy resulted in their unreasonable arrests and unreasonable searches and seizures of their phones in violation of their Fourth Amendment rights.  *Id.* at ¶ 529.

Plaintiffs allege D.A. Billy complained about Digmon's and Cindy Jackson's opposition

to Superintendent McClung and warned he would use the grand jury to punish McClung's opponents, while Sheriff Jackson threatened to jail McClung's detractors, all to further their respective relationships with McClung. Doc. 25 at ¶¶ 503, 507. Plaintiffs allege the men met with McClung and other Board members to discuss and advance the conspiracy and recruited Sheriff Jackson's deputies. *Id.* at ¶ 509. Plaintiffs allege the defendant deputies agreed to join the scheme. *Id.* at ¶ 510.

As to D.A. Billy, Plaintiffs allege: "DA Billy subpoenaed [Digmon's] phone records for the purpose of obtaining a search warrant without probable cause"; "DA Billy then shared [Digmon's] phone records with Sheriff Jackson and Deputy Odom, the latter of whom used the records to swear out a misleading warrant application lacking in probable cause"; "in concert with Sheriff Jackson and McClung, DA Billy drafted the September 19 subpoena as a trap to create pretextual grounds to arrest Plaintiffs"; D.A. Billy, Sheriff Jackson, Deputy Odom, and others planned "the pretextual bases for these warrants and criminal complaints"; he and the conspirators "planned Plaintiffs' arrests"; he and Sheriff Jackson had Digmon arrested a third time; and "DA Billy then worked with McClung and at least one other board member on an investigation to impeach [Digmon]." *Id.* at ¶¶ 511-12, 518, 522, 525-26.

Absolute immunity does not apply to Plaintiffs' allegations D.A. Billy was part of a conspiracy to deprive Digmon, Cindy Jackson, and Fore of their First and Fourth Amendment rights during the investigative phase by seizing and searching their cell phones.[8] The motion to dismiss is due to be denied with respect to Fore's, Digmon's, and Cindy Jackson's claims D.A. Billy was party to a conspiracy to violate their First (as to Digmon and Cindy Jackson) and Fourth

---

[8] Fore does not assert a claim for violation of her First Amendment rights in Count I.

(as to Digmon, Cindy Jackson, and Fore) Amendment rights by seizing and searching their phones.

However, D.A. Billy cannot be held liable for conspiring to violate Plaintiffs' rights by prosecuting them because he has absolute immunity for initiating and continuing their prosecutions and for Sherry's impeachment, and the remaining claims in Count V against D.A. Billy are due to be dismissed.  The motion to dismiss is due to be granted with prejudice as to Plaintiffs' claims D.A. Billy conspired to violate their rights by securing Digmon's indictment on ethics charges, filing the bill of impeachment against Digmon, securing the indictments of Digmon, Cindy Jackson, and Fletcher on the charge of revealing grand jury secrets, and reducing Digmon's bond.

The other claims dismissed are done so without prejudice, including Don's, Fore's, Digmon's, and Cindy Jackson's claims in Count V for conspiracy to violate their First and Fourth Amendment rights connected to their arrests.

E.    **Prayer for Declaratory Relief[9]**

Plaintiffs seek not only compensatory and punitive damages, but also declaratory relief. With respect to D.A. Billy, Plaintiffs ask the Court to declare that his past conduct violated their First and Fourth Amendment rights and that he engaged in a civil conspiracy to violate Plaintiffs' rights.  Doc. 25 at ¶¶ 530-534.  Absolute prosecutorial immunity does not apply to claims for declaratory relief.  *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000) (per curiam).  Although not challenged by D.A. Billy in his Motion to Dismiss, standing is a threshold jurisdictional issue. See *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005).  The Court is "obliged to consider questions of standing regardless of whether the parties have raised them." *Id.* at 975.  "In order to receive declaratory or injunctive relief, plaintiffs must establish that there was a violation,

---

[9] The Court addresses Plaintiffs' request for declaratory relief as to D.A. Billy only because all of Don Fletcher's claims against D.A. Billy for monetary damages are dismissed without prejudice to repleading herein.

that there is a serious risk of continuing irreparable injury if the relief is not granted, and the absence of an adequate remedy at law." (citation omitted); see also *Strickland v. Alexander*, 772 F.3d 876, 883 (11th Cir. 2014) (plaintiff seeking declaratory or injunctive relief must allege "a real and immediate—as opposed to a merely hypothetical or conjectural—threat of *future injury*")(citation omitted).

Plaintiffs have failed to show that they are entitled to declaratory relief against D.A. Billy. Their claims against him are all based on past conduct, and they have failed to allege sufficient facts indicating that there is a real and immediate threat of future injury from him. Accordingly, the claims for declaratory relief against D.A. Billy are due to be dismissed without prejudice for lack of standing.

## V.    DISCUSSION AND ANALYSIS – SHERIFF JACKSON AND DEPUTIES

### A.    Counts II and IV against Sheriff Heath Jackson in his official capacity are due to be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

Sheriff Heath Jackson seeks dismissal of Counts II (retaliation in violation of the First Amendment) and IV (violation of the Fourth Amendment) against him in his official capacity pursuant to Fed. R. Civ. P. 12(b)(1). Doc. 30, pp. 9-13. Citing *McMillian v. Monroe Cnty., Ala.*, 20 U.S. 781, 793 (1997), *Carr v. City of Florence*, 916 F.2d 1521 (11th Cir. 1990), and other authorities, Sheriff Jackson maintains he is a state official who has Eleventh Amendment immunity from Plaintiffs' official capacity claims against him for monetary damages and retrospective declaratory relief. *Id.*, pp. 10-13. Sheriff Jackson maintains that, even if he was not entitled to immunity, the allegations about an official policy are conclusory and insufficient to assert a claim against a county employee in their official capacity under a *Monell* theory of liability. Doc. 30, p. 10. With respect to Plaintiffs' request for declaratory relief, Sheriff Jackson asserts that the Eleventh Amendment precludes retrospective declaratory relief regarding past conduct and points

out that Plaintiffs do not seek prospective injunctive relief pursuant to *Ex parte Young*, 209 U.S. 123 (1908). *Id.*, p. 13 (citing *Students for Life v. Waldrop*, 90 F. Supp. 3d 1265, 1275 (S.D. Ala. 2015), and *Nicholl v. Att'y Gen., Ga.*, 769 F. App'x 813, 815 (11th Cir. 2019)).

They allege Sheriff Jackson, as policymaker with final authority, deliberately chose to procure and execute facially invalid warrants, seize Fore's phone without a warrant, and arrest Plaintiffs to retaliate against them for their protected speech. *Id.* Plaintiffs allege the Escambia County Sheriff's Office, through Sheriff Jackson's actions, "adopted and enforced an official policy, practice, or custom that caused the violation of Plaintiffs' fourth Amendment rights by authorizing the arrest of Plaintiffs and seizure of their phones without probable cause or any limitation on scope." Doc. 25 at ¶ 491.

The Eleventh Amendment provides that: "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI.[10] "Under the Eleventh Amendment, state officials sued for damages in their official capacity are immune from suit in federal court." *Jackson v. Georgia Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994) (citing *Kentucky v. Graham,* 473 U.S. 159, 169 (1985)).

In Alabama, sheriffs and deputy sheriffs have Eleventh Amendment immunity to § 1983 claims brought against them in their official capacities. *Carr v. City of Florence, Ala.,* 916 F.2d 1521, 1527 (11th Cir. 1990). "Alabama sheriffs, when executing their law enforcement duties,

---

[10] "Although the express language of the [Eleventh] [A]mendment does not bar suits against a state by its own citizens, the Supreme Court has held that an unconsenting state is immune from lawsuits brought in federal court by the state's own citizens." *Carr v. City of Florence*, 916 F.2d 1521, 1524 (11th Cir. 1990) (citing *Hans v. Louisiana*, 134 U.S. 1, 10 (1980)). Further, Congress has not abrogated Eleventh Amendment immunity in § 1983 cases, and Alabama has not waived its immunity. *Carr*, 916 F.2d at 1525 (citations omitted).

represent the State of Alabama, not their counties." *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 793 (1991); *see also* ALA. CONST. art. V, § 112 ("The executive department shall consist of … a sheriff for each county.") and ALA. CONST. art. I, § 14 ("the State of Alabama shall never be made a defendant in any court of law or equity."). Further, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Section 1983 provides in pertinent part:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….

42 U.S.C. § 1983 (emphasis added).

Plaintiffs concede in their Amended Complaint and their Opposition that Counts II and IV against Sheriff Heath Jackson are foreclosed by binding precedent. Doc. 25 at ¶ 423 n.1 and ¶ 490 n.2; Doc. 40, p. 9. In their Amended Complaint, Plaintiffs assert that "current precedent wrongly forecloses the availability of *Monell* liability claims against county sheriffs in Alabama." *Id.* at ¶ 423 n.1. Plaintiffs acknowledge in their Opposition that under *McMillian*, county sheriffs in Alabama are considered state officers, and further, that under *Will v. Mich. Dept of State Police*, 491 U.S. 58, 71 (1989), Sheriff Jackson is not a "person" for purposes of 42 U.S.C. § 1983. *See* Doc. 40, p. 9 n.2. Plaintiffs state that these claims were brought to preserve a challenge to *McMillian* on appeal. *Id.*

Plaintiffs do not directly address Sheriff Jackson's argument that he is also immune from plaintiffs' requests for declaratory relief in their prayer for relief. *See generally* Doc. 40. In any event, Sheriff Jackson is correct in stating that Plaintiffs do not argue that *Ex parte Young*, 209 U.S. 123 (1908), applies to their demand for declaratory relief. "In *Ex parte Young,* the Supreme

Court carved out a narrow exception to the States' sovereign immunity when it 'held that the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law.'" *Nat'l Ass'n of Boards of Pharmacy v. Bd. of Regents of the Univ. Sys. of Georgia*, 633 F.3d 1297, 1308 (11th Cir. 2011) (quoting *Green v. Mansour,* 474 U.S. 64, 68 (1985), *reh'g denied,* 474 U.S. 1111 (1986)).  However, "a plaintiff may not use the [*Ex parte Young*] doctrine to adjudicate the legality of past conduct."  *Summit Med. Assoc., P.C. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir. 1999).  That is precisely what plaintiffs attempt to do here with respect to their request for declaratory relief, and the *Ex parte Young* exception does not apply.

Sheriff Heath Jackson is a state official who has Eleventh Amendment immunity from Plaintiffs' official capacity claims against him as set forth in Counts II and IV.  Accordingly pursuant to Fed. R. Civ. P. 12(b)(6), the Court finds Sheriff Jackson's partial motion to dismiss is due to be granted as to Counts II and IV against him and as to Plaintiffs' prayer for declaratory relief concerning the alleged past violations of Plaintiffs' First and Fourth Amendment rights by Sheriff Jackson in his official capacity.

**B.      Ashley Fore's and Cindy Jackson's Fourth Amendment Claims (Count III) against Deputy Matthew Rabren for their arrests are due to be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).**

Deputy Matthew Rabren moves to dismiss Ashley Fore's and Cindy Jackson's Fourth Amendment claims against him as set forth in Count III for their arrests for failure to state a claim, citing the lack of any allegations he was involved in these events.  Doc. 30, p. 14.  In Count III, Plaintiffs assert claims against all defendants in their individual capacities for violation of their Fourth Amendment rights in connection with the search and seizures of three of the Plaintiffs' cell phones and the arrests of all of the Plaintiffs.  Doc. 25 at ¶¶ 435-485.   There are no allegations

that Deputy Rabren was involved in Fore's or Cindy Jackson's arrests. *Id.* at ¶¶ 218-250, 330-343.

Plaintiffs concede in their Opposition that the part of Cindy Jackson's and Fore's Fourth Amendment claims in Count III against Deputy Rabren for wrongful arrest should not proceed, as he did not participate in their arrests. Doc. 40, p. 9. Accordingly, Deputy Matthew Rabren's partial motion to dismiss Ashley Fore's and Cindy Jackson's Fourth Amendment Claims in Count III against him for their arrests pursuant to Fed. R. Civ. P. 12(b)(6) is due to be granted.

**C.    Sherry Digmon's Fourth Amendment Claim (Count III) against Deputy Steven Dereck Lowry for seizure of her phone is due to be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).**

Deputy Steven Dereck Lowry seeks to dismiss Sherry Digmon's Fourth Amendment Claim against him in Count III related to the seizure of her phone for failure to state a claim, citing the lack of any alleged involvement by him in the seizure. Doc. 30, p. 15. Plaintiffs concede in their Opposition that the part of Digmon's Fourth Amendment claim in Count III against Deputy Lowry for seizure of her phone should not proceed, as Deputy Lowry did not participate in the seizure of her phone. Doc. 40, p. 9. Accordingly, Deputy Steven Dereck Lowry's partial motion to dismiss Sherry Digmon's Fourth Amendment Claims in Count III against him for seizure of her phone is due to be granted pursuant to Fed. R. Civ. P. 12(b)(6).

**D.    Sherry Digmon's Fourth Amendment Claim (Count III) against Deputy Arthur Odom and Deputy Matthew Rabren for her second and third arrests is due to be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).**

Deputy Arthur Odom and Deputy Matthew Rabren seek dismissal of Sherry Digmon's Fourth Amendment Claims in Count III arising from her second and third arrests for failure to state a claim. Doc. 30, p. 16. These Defendants argue that the Amended Complaint does not allege that they were involved Digmon's second or third arrests. *Id*. Plaintiffs concede in their Opposition

that the part of Digmon's Fourth Amendment claims in Count III against Deputy Odom and Deputy Rabren for her second and third arrests should not proceed as to these defendants.  Doc. 40, p. 9.  Thus, that part of the motion to dismiss these claims is not contested and is due to be granted.

**E.      Sherry Digmon's Fourth Amendment Claim (Count III) against Sheriff Heath Jackson in connection with her second arrest is due to be dismissed under Fed. R. Civ. P. 12(b)(6) without prejudice to repleading.**

Sheriff Heath Jackson also seeks dismissal of Sherry Digmon's Fourth Amendment Claims in Count III arising from her second arrest for failure to state a claim, arguing that the Amended Complaint does not allege he was involved in the second arrest.  Doc. 30, p. 16.  In response, Plaintiffs maintain the claims against Sheriff Jackson should proceed because he planned and orchestrated the arrest, including directing his subordinates to carry out the arrest.  Doc. 40, p. 9. Plaintiffs argue that Sheriff Jackson participated in a "retaliatory scheme" with D.A. Billy to arrest plaintiffs in retaliation for their speech and point to the following paragraphs of the Amended Complaint (Doc. 25) to rebut Sheriff Jackson's argument there are no allegations he was involved in Digmon's second arrest: ¶¶24, 31-32, 66, 71, 76, 80-82, 86-103, 122-132, 134-146, 164-169, 199-202, 226-241, 252-261, 286, 290 294-295, 303-307, 311, 313-330, 332-338, 344-353, 366-367, and 369-373.  (Doc. 40, p. 13-14).

Plaintiffs assert in their Opposition that D.A. Billy withheld material information from the grand jury because he was conspiring with Sheriff Jackson to arrest Digmon and, further, that "[t]he grand jury would not have indicted Digmon but for the co-conspirators' misleading them and withholding material information."  Doc. 40, p. 13.  They do not cite to any portion of the Amended Complaint in support of this contention.  *Id.*  They do not cite any factual allegations in the Amended Complaint in support of their assertion that the co-conspirators "used the grand jury

to help carry out their pretextual arrests." *Id.* They assert that Sheriff Jackson "directed the seizure of Digmon's second arrest, just as he'd directed all the other unconstitutional seizures in this case." *Id.* at p. 14. Finally, Plaintiffs argue that the chronology of events and commonality of actors support a "circumstantial claim" that Sheriff Jackson was also involved in Digmon's second arrest. *Id.* at p. 14 (citing *Gibbons v. McBride*, 124 F. Supp. 3d 1342, 1380 (S.D. Ga. 2015), and *Keating v. City of Miami*, 598 F.3d 753, 765 (11th Cir. 2010).

The Fourth Amendment "secure[s]" the "people ... against unreasonable searches and seizures," and it guarantees that "no Warrants shall issue, but upon probable cause." U.S. CONST. amend. IV. "Section 1983 is an 'independent cause of action designed' to 'allow for private enforcement' of federal rights 'in courts.' " *Gervin v. Florence*, 139 F.4th 1236, 1246 (11th Cir. 2025) (quoting *DeVillier v. Texas*, 601 U.S. 285, 291 (2024)). "To determine the elements of a constitutional claim under § 1983, this Court's practice is to first look to the elements of the most analogous tort as of 1871 when § 1983 was enacted, so long as doing so is consistent with the values and purposes of the constitutional right at issue." *Thompson v. Clark*, 596 U.S. 36, 43 (2022) (citations and internal quotation omitted). The parties agree that any Fourth Amendment claim against Sheriff Jackson related to Digmon's second arrest following the grand jury's indictment would be for malicious prosecution. *See* Doc. 40, p. 11, and Doc. 43, p. 5.

A Fourth Amendment malicious prosecution is "a mashup" combining the Fourth Amendment's constitutional elements and the elements of a common-law malicious prosecution claim. *Gervin*, 139 F.4th at 1247-48 (citing *Butler v. Smith*, 85 F.4th 1102, 1111 (11th Cir. 2023)).

> "The Supreme Court has explained that '[i]n American courts as of 1871, the malicious prosecution tort generally allowed recovery against an individual who had initiated or caused the initiation of criminal proceedings despite having 'no good reason to believe' that criminal charges were 'justified by the facts and the law.' " *Thompson* [*v. Clark*], 596 U.S. [36,] 43 [(2022)] (quoting THOMAS M. COOLEY, A TREATISE ON THE LAW OF TORTS OR THE WRONGS WHICH

ARISE INDEPENDENT OF CONTRACT 180 (Chi., Callaghan & Co. 1879)). During that period, a plaintiff could state a claim for malicious prosecution by showing three elements: "(i) the suit or proceeding was 'instituted without any probable cause'; (ii) the 'motive in instituting' the suit 'was malicious,' which was often defined in this context as without probable cause and for a purpose other than bringing the defendant to justice; and (iii) the prosecution 'terminated in the acquittal or discharge of the accused.' " *Id.* at 44 (quoting COOLEY, *supra*, at 181).

Our precedent incorporates these three elements into a modern claim for violation of the Fourth Amendment's guarantee of security against unreasonable seizures.

*Gervin*, 139 F. 4th at 1247; *see also Williams v. Aguirre*, 965 F.3d 1147, 1157 (11th Cir. 2020) ("Under the common-law elements of malicious prosecution, [the plaintiff] must prove that the officers 'instituted or continued' a criminal prosecution against him, 'with malice and without probable cause,' that terminated in his favor and caused damage to him.") (citation and internal quotations omitted).

To state a Fourth Amendment malicious prosecution claim, a plaintiff must allege: "(1) the plaintiff was seized under legal process; (2) the legal process justifying the plaintiff's seizure was constitutionally infirm; (3) the suit or proceeding terminated in the plaintiff's favor; and (4) the seizure would not otherwise be justified without legal process." *Gervin*, 139 F.4th at 1248. A seizure following an indictment is a seizure pursuant to legal process. *Williams*, 965 F.3d at 1158. However, the issue here is whether *Sheriff Jackson* seized Digmon under legal process or had a role in effecting the legal process that resulted in her seizure. *See Gervin*, 139 F. 4th at 1248. "To establish § 1983 liability, a plaintiff must show 'proof of an affirmative causal connection' between a government actor's acts or omissions and the alleged constitutional violation, which 'may be established by proving that the official was personally involved in the acts that resulted in the constitutional deprivation.'" *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 737 (11th Cir. 2010) (quoting *Zatler v. Wainwright,* 802 F.2d 397, 401 (11th Cir.1986)); *see also Faile v. City of Leesburg, FL*, 2024 WL 2148637 (11th Cir. 2024) ("Individual liability under § 1983 requires a

causal connection between the individual defendant's conduct and the alleged constitutional violation.").

Law enforcement officers are not the legal cause of a criminal proceeding "where there was no evidence that they had anything to do with the decision to prosecute or that they had 'improperly influenced' that decision." *Williams v. Miami-Dade Police Dep't*, 297 F. App'x 941, 947 (11th Cir. 2008) (per curiam) (citing *Eubanks v. Gerwen*, 40 F.3d 1157, 1160–61 (11th Cir. 1994)). Further, in *Jones v. Cannon*, 174 F. 3d 1271 (11th Cir. 1999), the Eleventh Circuit stated that "[t]he intervening acts of the prosecutor in presenting the murder case to the grand jury and of the grand jury returning the indictment broke the chain of causation for any detention of [the plaintiff] that followed the grand jury indictment." *Id.* at 1287.

However, in *Williams*, the Eleventh Circuit observed that "[a]lthough grand-jury witnesses are absolutely immune from liability based on their testimony, *see Rehberg* [*v. Paulk*, 566 U.S. 356, 369 (2012)], the Supreme Court has suggested that a plaintiff could maintain a claim under the Fourth Amendment for a seizure that followed an indictment, *see Manuel* [*v. City of Joliet, Ill.*, 580 U.S. 357, 369 n.8 (2017)]." 965 F.3d at 1168. The court noted that "other circuits allow claims for seizures that follow a grand-jury indictment if the officer's nontestimonial actions tainted the indictment." *Williams*, 965 F.3d at 1168 (citing *King v. Harwood*, 852 F.3d 568, 584 (6th Cir. 2017); *Coggins v. Buonora*, 776 F.3d 108, 113 (2d Cir. 2015)). However, in *Williams* the Eleventh Circuit ultimately did not reach the issue because the seizure at issue occurred prior to the indictment. *Id.*

In any event, here there are no factual allegations in the Amended Complaint suggesting that Sheriff Jackson had any involvement in Digmon's post-indictment second arrest. The allegations concerning Digmon's second arrest on November 1, 2023, are set forth in Paragraphs

293-312 of the Amended Complaint. Doc. 25 at ¶¶ 293-312. Plaintiffs allege Digmon was arrested a second time following her indictment on ethics violations related to the *Atmore News*' sale of ad space to the Board. *Id.* Plaintiffs allege "DA Billy was able to obtain indictments only because he knowingly or recklessly misled the grand jury on the material facts necessary to satisfy the elements of the criminal charges." *Id.* at ¶ 477. Plaintiffs allege "Sheriff Jackson's office booked [Digmon] again, took her mugshot again, and took her fingerprints again" when Digmon surrendered herself at the Brewton jail. *Id.* at ¶¶ 308-309. Plaintiffs allege that a deputy at the jail told Digmon, "[w]e all know this was political." *Id.* at ¶ 311.

As Sheriff Jackson argues, the Amended Complaint is devoid of any non-conclusory, factual allegations that Sheriff Jackson directed or was otherwise involved in Digmon's second arrest, including any factual allegation that Sheriff Jackson "improperly influenced" or misled the grand jury. Plaintiffs do not allege Sheriff Jackson withheld information from the grand jury or fabricated evidence, or that any action by Sheriff Jackson led to or otherwise contributed to a tainted grand jury indictment of Digmon. As Sheriff Jackson points out, none of the factual allegations regarding his meetings with DA Billy and Superintendent McClung or the factual allegations regarding the other arrests are tied to Digmon's second arrest following her indictment.

The cases relied on by Plaintiffs do not support their position. Plaintiffs cite *Gibbons v. McBride*, 124 F. Supp. 3d 1342, 1380 (S.D. Ga. 2015), as supporting their claim that a "chronology of events" and "commonality of actors" can support a "circumstantial claim" that an officer involved in one violation was involved in another. Doc. 40, p. 14. However, the portion of *Gibbons* that Plaintiffs cite dealt with the viability of a conspiracy claim, and not whether the complaint stated a claim for the underlying constitutional violation. *See Gibbons*, 124 F. Supp. 3d at 1379-1380 (observing that the existence of a § 1983 conspiracy can be based on circumstantial

evidence and held that, despite the lack of allegations plausibly suggesting an agreement between the officers, "the chronology of events and the commonality of actors" was sufficient at the pleadings stage "to state a circumstantial claim by the slimmest of margins" that the officers were working in concert.)

Plaintiffs' reliance on *Keating v. City of Miami*, 598 F.3d 753, 765 (11th Cir. 2010), is likewise unpersuasive.   Plaintiffs argue that *Keating* supports their assertion that "circumstantial evidence that satisfies the elements of conspiracy is enough at the motion to dismiss stage to maintain a claim against a sheriff for directing his deputies to help carry out his unconstitutional, retaliatory scheme." Doc. 40, p. 14.   The Court agrees with Sheriff Jackson that *Keating* does not support Plaintiffs' assertion.   *Keating* involved claims of supervisory liability.   Plaintiffs do not expressly assert a claim for supervisory liability.[11]   Further, the *Keating* plaintiffs expressly alleged

---

[11] Plaintiffs do not expressly plead a claim for supervisory liability under § 1983 or argue that theory of liability in their Opposition.  *See generally* Docs. 25 and 40.  A supervisory liability claim requires that either "the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation."  *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  A causal connection may be demonstrated by:

> (1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; (2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so.

*Myrick v. Fulton Cnty., Georgia*, 69 F.4th 1277, 1297–98 (11th Cir. 2023) (quoting *Mathews v. Crosby*, 480 F. 3d 1265, 1270 (11th Cir. 2007)).

To the extent that Plaintiffs attempt to assert such a claim, the Court finds that the Amended Complaint does not contain factual allegations of a causal connection between Sheriff Jackson's actions and Digmon's post-indictment second arrest in any of these three ways to state a claim for supervisory liability under § 1983.  Although Plaintiffs allege in Count IV (the official capacity claim against Sheriff Jackson for violation of Plaintiffs' Fourth Amendment rights being dismissed herein), that Sheriff Jackson enacted and enforced "an official governmental policy that resulted

that the supervising officers chief of police "approved orders permitting the police line to advance while beating unarmed demonstrators and discharging projectiles and tear gas," "made the decision to use 'herding techniques' to corral the demonstrators," and "directed the police lines to begin discharging weapons." 598 F.3d at 763. Plaintiffs' Amended Complaint does not contain any such allegations that Sheriff Jackson directed subordinates or made decisions related to Digmon's second arrest, and *Keating* is easily distinguished from the present case.

The Amended Complaint is devoid of factual allegations that Sheriff Jackson was involved in Digmon's second arrest, and Sheriff Jackson's motion to dismiss this portion of Count III is due to be granted under Rule 12(b)(6). This dismissal is without prejudice to repleading. "The court should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). Generally, "where a more carefully drafted compliant might state a claim, a plaintiff must be given at least one chance to amend." *Bryant v. Dupree*, 252 F. 3d 1161, 1163 (11th Cir. 2001). However, the district court need not allow amendment where it would be futile or where there has been undue delay or bad faith or repeated failure to cure errors. *Id.* Further, "[a] district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002). The Court is mindful that it has already afforded Plaintiffs one opportunity to amend their Complaint to correct deficiencies related to shotgun pleading. *See* Doc. 24. Nonetheless, the Court cannot say that a second amendment would be futile or that Plaintiffs have been guilty of undue

---

in the unreasonable arrest of Plaintiffs" and a "widespread practice of seizing and searching persons and property without probable cause" as exhibited by "the six total arrests of Plaintiffs over a four-month span, as well as the previous attempts to use the threat of force to silence political speech critical of McClung" (Doc. 25 at ¶¶ 492, 496-497), these allegations are conclusory without further factual support. *Id.* at ¶¶471-485.

delay or bad faith.

**F.    The Partial Motion to Dismiss is due to be denied in part as to Sherry Digmon's claim against Sheriff Heath Jackson in Count III regarding her third arrest.**

Sheriff Jackson also argues that the Amended Complaint does not allege his involvement with Digmon's third arrest.  Doc. 30, p. 16.  According to the Amended Complaint, on February 12, 2024, "[t]he Sheriff's Office" told [Digmon's] attorney that they needed [Digmon] to bring paperwork to the jail.  Doc. 25 at ¶¶ 361-362.  A deputy took her mugshot and fingerprints and told her that every time she was arrested she had to have them done again.  *Id.* at 364.  Plaintiffs allege that Digmon's third arrest was purportedly to reprocess her after D.A. Billy reduced her bond on his own initiative, but the real reason for it was "to humiliate, degrade, and punish her one last time before Billy finally admitted his conflicts of interest."  *Id.* at ¶¶ 366-67.  She was released after she paid a processing fee.  *Id.* at ¶ 368.  In connection with Count V, Plaintiffs allege "DA Billy and Sheriff Jackson had [Digmon] arrested a third time and booked into jail once again— this time for no real reason."  *Id.* at ¶ 526.

Plaintiffs respond that Sheriff Jackson "had his deputies lure [Digmon] to jail under false pretenses and arrested her again just to show that they could."  Doc. 40, p. 15 (citing Doc. 25 at ¶¶ 361-368).  Plaintiffs again argue that the chronology and commonality of actors "supports the strong inference that Sheriff Jackson was responsible for [Digmon's] third arrest."  *Id.*  Finally, Plaintiffs argue that the deputies could only have made the call to "lure" Sherry to jail if they were directed to do so by Sheriff Jackson.  *Id.*  Plaintiffs again argue that Sheriff Jackson was the legal cause of Digmon's third arrest.  In reply, Sheriff Jackson asserts that the Amended Complaint is devoid of any allegation that Sheriff Jackson directed the officers to "lure" Digmon to the jail or was otherwise personally involved.  Doc. 43, p. 9.  Sheriff Jackson points out that the Amended Complaint alleges the arrest occurred after D.A. Billy reduced her bond, such that an alternative

explanation is that D.A. Billy caused Digmon's third arrest. *Id.*

The parties agree that Digmon's claim concerning her third arrest is for false arrest. *See* Docs. 40, p. 11 and 43, p. 8. "A claim for false arrest arises when an arrest occurs without a warrant and without probable cause." *Jones v. Brown,* 649 F. App'x, 889, 890 (11th Cir. 2016). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Vicarious liability does not apply to § 1983 claims, and Plaintiffs "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Here, the Plaintiffs allege in the Amended Complaint that Sheriff Jackson and D.A. Billy had Digmon arrested for the third time. Doc 25 at ¶ 526. While this allegation might be considered conclusory standing alone, when viewed in the context of other factual allegations in the Amended Complaint (including allegations concerning Jackson's threats to imprison McClung's detractors), one can reasonably infer that Sheriff Jackson directed his deputies to arrest Digmon for the third time. The motion is due to be denied as to Digmon's claim against Sheriff Jackson for her third arrest.

## VI.    CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that:

(1)    The *Motion to Dismiss Amended Complaint and Incorporated Brief* filed by Defendant Stephen Billy, District Attorney for Escambia County (Doc. 29, filed April 10, 2025), is **GRANTED in part** and **DENIED in part**.

(a) The motion is **DENIED** as to the following claims against District Attorney Stephen Billy:

    **(i)** Plaintiffs Sherry Digmon's and Cynthia Jackson's claims pursuant to 42 U.S.C. § 1983 for retaliation in violation of the First Amendment in Count I related to their allegations that their respective cell phones were seized and searched;

    **(ii)** Plaintiffs Sherry Digmon's, Cynthia Jackson's, and Veronica Ashley Fore's Fourth Amendment claims pursuant to 42 U.S.C. § 1983 in Count III related to their allegations that their respective cell phones were seized and searched;

    **(iii)** Plaintiffs Sherry Digmon's and Cynthia Jackson's claims pursuant to 42 U.S.C. § 1983 for conspiring to violate their First Amendment rights in Count V related to their allegations that their cell phones were seized and searched; and

    **(iv)** Plaintiff Sherry Digmon's, Cynthia Jackson's, and Veronica Ashley Fore's claims pursuant to 42 U.S.C. § 1983 for conspiring to violate their Fourth Amendment rights in Count V related to their allegations their respective cell phones were seized and searched.

(b) The motion to dismiss is **GRANTED** as to all remaining claims for monetary damages asserted by Plaintiffs against District Attorney Stephen Billy.

    **(i)** To the extent Plaintiffs assert claims against District Attorney Stephen Billy in Count I and Count V for securing Sherry Digmon's indictment on ethics charges; securing indictments of Cindy Jackson, Don Fletcher, and Sherry

Digmon on the charge of revealing grand jury secrets; and reducing Sherry Digmon's bond, these claims are **DISMISSED with prejudice**;

**(ii)**   Sherry Digmon's claims against District Attorney Stephen Billy in Count I and Count V for filing a bill of impeachment against her are **DISMISSED with prejudice**; and

**(iii)**   The other claims dismissed are **DISMISSED without prejudice** to repleading.

**(2)**   Plaintiffs Sherry Digmon's, Cindy Jackson's, Veronica Ashley Fore's, and Don Fletcher's claims for declaratory relief against District Attorney Stephen Billy are **DISMISSED without prejudice** for lack of standing.

**(3)**   The *Defendants' Partial Motion to Dismiss* filed by defendants Sheriff Heath Jackson, Deputy Steven Derek Lowry, Deputy Matthew Rabren, and Deputy Arthur Odom (Doc. 30, filed April 10, 2025) is **GRANTED in part** and **DENIED in part**:

**(a)**   The *Defendants' Partial Motion to Dismiss* is **GRANTED** as to the following claims that are **DISMISSED with prejudice**:

**(i)**   Sherry Digmon's, Cynthia Jackson's, and Don Fletcher's claims in Counts II and IV against Sheriff Heath Jackson in his official capacity;

**(ii)**   Veronica Ashley Fore's and Cynthia Jackson's claims against Deputy Mathew Rabren for their arrests in Count III;

**(iii)**   Sherry Digmon's claim against Deputy Steven Dereck Lowry for seizure of her phone in Count III; and

**(iv)**   Sherry Digmon's claims against Deputy Arthur Odom and Deputy Matthew Rabren for her second and third arrests in Count III.

**b.**    The *Defendants' Partial Motion to Dismiss* motion is further **GRANTED** as to Sherry Digmon's claims against Sheriff Heath Jackson for her second arrest in Count III, which are **DISMISSED without prejudice** to repleading; and

**c.**    The *Defendants' Partial Motion to Dismiss* is **DENIED** as to the request to dismiss Sherry Digmon's claims against Sheriff Heath Jackson for her third arrest set forth in Count III.

**DONE** and **ORDERED** this 25th day of March 2026.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE